**John F. KNIGHT et al, Plaintiffs,**

**v.**

**Fob JAMES et al, Defendants.**

**Civ. A. No. 81–52–N.**

United States District Court,
M. D. Alabama, N. D.

May 20, 1981.

Watkins, Carter & Daniel, Donald V. Watkins, Montgomery, Ala., and Blacksher, Menefee & Stein, James U. Blacksher and Larry T. Menefee, Mobile, Ala., for plaintiffs.

Brantley & Calhoun, Richard F. Calhoun, Troy Ala., for defendant Troy State University.

Gray, Seay & Langford, Solomon S. Seay, Jr., Montgomery, Ala., for defendant Board of Trustees for Alabama State University.

Samford & Samford, Thomas D. Samford, III, Opelika, Ala., and Hill, Hill, Carter, Franco, Cole & Black, James J. Carter, Montgomery, Ala., for defendant Auburn University.

Ira DeMent, Montgomery, Ala., for defendants Fob James, Ala. Public School & College Authority and Alabama Commission of Higher Education.

## MEMORANDUM OPINION

HOBBS, District Judge.

The above styled cause is now before the Court on motions filed by defendants James and the Alabama Commission on Higher Education (ACHE) to stay the instant law suit pending resolution of administrative proceedings. The parties have submitted thorough legal briefs and presented oral arguments on the issue now before the Court. After careful consideration of defendants' motions and the arguments presented by all parties, the Court is of the opinion that defendants' request for a stay should be granted.

In the pending suit, plaintiffs seek injunctive and declaratory relief on behalf of themselves as students, alumni, faculty and staff personnel of Alabama State University and all other persons similarly situated. Plaintiffs allege that the State of Alabama has perpetuated a *de jure* system of segregated public higher education in the area of the city of Montgomery by establishing and continuing to operate in the Montgomery area the predominantly white colleges of Auburn University at Montgomery (AUM) and Troy State University at Montgomery (TSUM) as well as the predominantly black college of Alabama State University (ASU). Plaintiffs assert that the current "dual" system of public higher education in the Montgomery area violates plaintiffs' rights to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution, and that accordingly,

plaintiffs and the class they seek to represent are entitled to relief under 42 U.S.C. § 1983. Plaintiffs also argue that since AUM, TSUM, and ASU all receive federal funding, the alleged actions of defendants violate plaintiffs' rights guaranteed by Title VI of the Civil Rights Acts of 1964, 42 U.S.C. § 2000d et seq. Finally, plaintiffs seek relief on a pendent state claim under Code of Alabama, §§ 16–50–1; 6–5–4.

By way of relief for these alleged violations of plaintiffs' constitutional and statutory rights, plaintiffs ask this Court to order the merger of AUM and TSUM with ASU under the name of "Alabama State University" and under the control of ASU's Board of Trustees.

Defendants James and ACHE respond to plaintiffs' suit by asking the Court to stay these proceedings pending the exhaustion of a current and ongoing Department of Education administrative proceeding which seeks to correct any violations of Title VI by the State of Alabama. According to defendants James and ACHE, this administrative proceeding now in progress "is designed to address, on a statewide basis, alleged discrimination in Alabama's system of public higher education, including those institutions in Montgomery." (Br. p. 2)[1]

Defendants contend that the doctrines of primary jurisdiction and exhaustion of administrative proceedings dictate the issuance of a stay by this Court pending the outcome of these administrative proceedings. They urge the unfairness, undue burden and expense of forcing defendants to litigate the administrative and judicial proceeding at the same time. The Court finds defendants' arguments based on the doctrine of primary jurisdiction persuasive.

The lawsuit now before the Court presents a seemingly classic case for the application of the doctrine of primary juris-

---

1. The administrative process in question began on January 7, 1981, when the Department of Education served the officials of the State of Alabama responsible for the administration of Alabama's system of higher education with a notice of noncompliance with Title VI. Plaintiffs have not disputed that the administrative proceeding will be concerned with the same issue which they seek to litigate contemporaneously in this court.

diction.[2] Even the plaintiffs acknowledge the force of defendants' arguments: "At first blush, the arguments for a stay seem attractive. After all, why should the federal court involve itself in a controversy that might conceivably be resolved in administrative proceedings that have already been initiated?" (Br. p. 7) Plaintiffs seek to counter the apparent appropriateness of a stay in this case by directing the Court's attention to several decisions by other federal courts, which plaintiffs contend require a denial of defendants' motions for a stay. The Court does not agree with plaintiff's reading of these decisions.

Plaintiffs rely heavily on *Geier v. University of Tennessee*, 597 F.2d 1056 (6th Cir. 1979). The district court in *Geier* entered a judgment directing a predominantly white state college and a predominantly black state college, both located in Nashville, Tennessee, to merge in order to eradicate a dual system of higher education existing in the Nashville area. The lower court judgment directed the board of trustees of the predominantly black institution to file a plan for merging the two schools within seventy-five days from the date of the court's order. Several appeals were filed from this judgment.

Pursuant to the order of the lower court, the board of trustees filed a proposed plan for merger. Several of the parties objected to the board of trustees' proposal. Faced with these objections, the district court first held it had no jurisdiction because notice of appeal in the suit had already been filed. Later, the district court reconsidered its position and held that the plan submitted by the board of trustees did not violate the court's earlier judgment and that the plan should be put into effect unless the court's earlier judgment was stayed. The district court and the Court of Appeals for the Sixth Circuit then denied motions for stay. For several reasons, the Court does not find the denial of the stay in the *Geier* litigation controlling of the issues now under consideration.

In regard to whether a district court should stay its own proceedings, the differences between the Tennessee litigation and the instant case are manifold. In *Geier*, there was no ongoing administrative process designed to remedy the precise problem which plaintiffs are allegedly seeking to remedy in this suit, i. e., the elimination of all vestiges of a segregated system of higher education.

Second, the district court in *Geier* did not immediately order the relief sought by plaintiff. Instead it attempted to allow the parties to solve on their own the problems raised by the litigation. Although the defendants ultimately failed to achieve on their own a solution satisfactory to the parties or the court, the Sixth Circuit indicated that it approved the course of initial restraint followed by the district judge:

> The district court stayed its hand for years in order to give the defendants an opportunity to effectuate a meaningful desegregation of TSU. The court initially approved the approach championed by the defendants of instituting joint and cooperative programs while permitting the two institutions to

\*      \*      \*      \*      \*      \*

> The doctrine *does not govern judicial review of administrative action*, and therefore differs from exhaustion or ripeness concepts. It instead controls whether a court or agency should make the initial decision. A main tenet behind its invocation has traditionally been, not merely that an agency has "expertise," but the need to coordinate in an orderly and sensible manner the work of agencies and courts. *State v. Department of Health, Education & Welfare*, 480 F.Supp. 929, 935 (E.D.N.C.1979) (emphasis added).

**2.** A district court recently faced with the question of whether to stay its hand pending resolution of an ongoing administrative proceedings, under circumstances similar to those involved in the instant suit, offered the following description of the doctrine of primary jurisdiction:

> Early in the development of administrative bodies, the federal courts recognized that coordination between traditional judicial machinery and these agencies was imperative if consistent and coherent policies were to emerge.... Primary jurisdiction is one of the key principles through which this supportive relationship is achieved.

continue their separate existence. After nearly nine years the court found that no progress was being made with this approach and that this failure resulted largely from the inability of the governing boards to agree. The district court clearly took into account the interest of the defendants in managing higher education programs of the State on a statewide basis. However, when the authorities "fail[ed] in their affirmative obligations," *Milliken II, supra,* 433 U.S. [267] at 281, 97 S.Ct. 2749, [53 L.Ed.2d 745] the court properly invoked its equitable power. *Geier,* 597 F.2d at 1068.

In the instant suit, the prospects for a resolution of the issues involved without the necessity of a trial in this Court appear more hopeful than they did in the Tennessee litigation. From all appearances, defendants in the instant litigation are now engaged in good faith negotiations with the Department of Education to solve on a statewide basis the same problems raised by plaintiffs in regard to the Montgomery area alone.

Moreover, the denial of the stay motion in *Geier* came only after the court had taken jurisdiction of the suit, heard arguments in the suit over the course of nine years, and issued an order requiring the merger of the two institutions involved. The differences between such a situation and the one now before the Court do not need to be belabored. The plaintiffs in the instant suit filed their complaint less than six months ago and only *after* the Department of Education had begun its proceedings in Alabama to insure compliance of the

state's system of higher education with Title VI of the Civil Rights Act of 1964.

Plaintiffs rely on other decisions in opposing defendants' motion for stay. Plaintiffs argue that the decision in *NAACP v. Medical Center, Inc.,* 599 F.2d 1247 (3d Cir. 1979) requires this Court to proceed despite the ongoing administrative proceedings discussed above.

In *NAACP v. Medical Center,* the Court of Appeals faced the question of whether a private right of action exists under Title VI of the Civil Rights Act of 1964. The district court had denied plaintiffs' right to a trial *de novo* on the issue of whether defendants had violated Title VI on the grounds that there existed no private right of action in favor of plaintiffs under Title VI. The Court of Appeals reversed the district court's holding.

This Court is not faced with the question of whether there exists a private right of action under Title VI. Defendants concede that if plaintiffs so desire they may challenge any plan emerging from the administrative process now underway. Defendants ask only that plaintiffs not be allowed to proceed with their action in this Court *until after* the parties involved in the current administrative proceedings have received a fair opportunity to solve on their own the very same problems that plaintiffs seek to address by way of a second proceeding in this Court. Furthermore, there is no reason to believe that plaintiffs would be entitled to something less than a trial *de novo* should they elect to proceed with their suit following the termination of the current administrative proceedings.[3] In short, the

---

**3.** Although plaintiffs contended during oral argument that the recent decision of the Court of Appeals for the Fifth Circuit in *Drayden v. Needville Independent School District,* 642 F.2d 129 (5th Cir. 1981) would preclude their bringing suit under Title VI following the termination of the administrative proceeding now in progress, this Court does not agree. Plaintiffs rely on the conclusion in *Drayden* that earlier action by HEW made moot plaintiffs' claim under Title VI. The situation in *Drayden* was, however, quite different from that now at hand. In *Drayden,* plaintiffs sought restitution of federal funds received by defendants, declaratory

relief stating that defendants were in violation of Title VI and injunctive relief requiring defendants to comply with Title VI. The Court of Appeals found restitution unavailable as a remedy under Title VI. As to the remainder of plaintiffs' claims under Title VI, the appellate court found that the relief sought by plaintiffs had already been realized in earlier actions by HEW. Thus, the Fifth Circuit concluded:

> [E]ven assuming that the appellants do have a right to bring a private cause of action seeking to declare acts perpetrated by a school district as discriminatory and seeking to enjoin any future action under the provi-

issue before this Court is not whether plaintiffs have a private right of action under Title VI, and thus the right to a trial *de novo* following an administrative hearing designed to eliminate the alleged violations of Title VI, as it was in *NAACP v. Medical Center, Inc.*, but rather whether a district court must proceed immediately to trial on a suit filed by private, individual litigants when there exists a current and ongoing administrative proceeding predating the private suit and intended to correct all of the problems that would be before the court should it hear the suit of the private litigants. The Court finds nothing in *NAACP v. Medical Center, Inc.* to argue against the issuance of a stay in this suit.

The Court has carefully considered the legal arguments advanced by plaintiffs and is sensitive to the concerns expressed by plaintiffs regarding the continuation of vestiges of a segregated educational system in the Montgomery area. The Court cannot, however, find any suggestion in the authority offered by plaintiffs that this Court ignore the ongoing administrative process and proceed forthwith to trial on plaintiffs' suit.

Against the arguments of plaintiffs discussed in the preceding paragraphs run strong considerations in favor of granting a stay. First, the administrative proceeding now in progress concerns the entire state of Alabama. The parties involved are attempting to bring the entire system of higher education in Alabama into compliance with Title VI of the Civil Rights Act of 1964. This task encompasses sixteen institutions of higher learning in the state, only three of which are involved in plaintiffs' suit. Clearly, the intervention of this

Court at this point would cause duplication of proceedings. In addition, any relief fashioned by this Court for the Montgomery area runs a risk of upsetting whatever statewide scheme the parties to the administrative process might eventually formulate.

Second, in the opinion of this Court, the statewide approach adopted by the parties to the administrative proceedings represents a much more sensible way of addressing the problems at hand. The conditions of which plaintiffs complain arise from a system of segregation which affected the entire system of Alabama, not simply the Montgomery area. Given the interconnectedness of the state's system of higher education, the Court believes that such problems are best dealt with by addressing the state system of higher education as a whole.

Finally, if the relief which plaintiffs seek were easily fashioned, the Court would not stay judicial proceedings for an administrative process which concededly will be lengthy. For example, if plaintiffs were alleging that they were denied admission to AUM or TSUM because of their race, this Court would not wait for an administrative process to adjudicate and provide judicial relief. In this case, however, the complexity of the problem and the uncertainty as to the appropriate relief to accomplish the desired end make it sensible for this Court to get all the assistance that is available before attempting to solve the problem. The expertise of an administrative agency in searching for the optimum solution is welcome and in the long run should be beneficial to all parties. This fact has been acknowledged by other courts and is appropriate for consideration by this Court in the

---

sions of Title VI, such a finding has already been made by the HEW in this case.... Any declaratory or injunctive relief granted by a district court regarding the cessation of discriminatory practices regarding the appellants would now be moot.

The basis of the *Drayden* court's holding is simply that the relief sought by plaintiffs had already been achieved. Contrary to plaintiffs' interpretation, this Court does not read *Drayden* as immunizing the decision of the Secretary of Education from judicial review. For

example, had plaintiffs argued in *Drayden* that the relief ordered by the Secretary was inadequate, and as they did in *NAACP v. Medical Center, Inc.* that the Secretary's conclusion was based on "erroneous and inadequate findings," this Court is convinced that the Fifth Circuit would have reached a different conclusion in *Drayden.* The crux of Judge Garza's opinion is simply that all of the relief sought by plaintiffs in *Drayden* had been achieved, not that the decision of the Secretary is immune to judicial review.

instant suit. See *State v. Department of Health, Education and Welfare*, 480 F.Supp. 929 (E.D.N.C.1979).

For all of these reasons, the Court believes the issuance of a stay is appropriate under the circumstances presented by this suit. The final issue for consideration at this point in the proceedings is the duration of the stay to be issued by this Court.

Recognizing the concerns of the plaintiffs and the gravity of the constitutional and statutory violations alleged by plaintiffs, the Court does not intend that its stay operate for such a time period as was involved in the *Geier* case nor does it intend to permit the administrative proceedings to drag on indefinitely without resolution. Accordingly, defendants will be directed to file with this Court ninety days from the date of this opinion a report on the progress of the current Department of Education proceedings in the State of Alabama. At that time the Court will reconsider the posture of the instant suit.

An order will be entered in accordance with this opinion.

## ORDER

In accordance with the memorandum opinion entered this date in the above styled cause, it is ORDERED that all further proceedings in this cause be and the same are hereby stayed for a period of ninety days.

Defendants are further ORDERED to file a report with the Court, as set out more fully in the accompanying memorandum opinion.