**UNITED STATES of America,**
**Plaintiff,**

v.

**Aaron SCOLNICK and Hyman Scolnick,**
**Defendants.**

**Civ. A. No. 59–113–F.**

United States District Court
D. Massachusetts.

June 20, 1963.

W. Arthur Garrity, Jr., U. S. Atty., William C. Madden, Asst. U. S. Atty., for plaintiff.

Francis M. Qua, Lowell, Mass., for Union National Bank.

Dean Nicholson, Haverhill, Mass., for A. Scolnick and H. Scolnick.

FRANCIS J. W. FORD, District Judge.

In this action the United States seeks to recover from defendants damages under 31 U.S.C.A. §§ 231 and 232 resulting from an alleged presentation of false claims against the United States, or alternatively to recover from the defendants amounts by which they were un-

justly enriched as a result of payments allegedly made by the United States by mistake.

Defendant Aaron Scolnick at the times material here was president, treasurer and principal stockholder of Production, Inc., a Massachusetts corporation with a place of business in Lowell. On November 21, 1952 Production, Inc. entered into a contract with the Armed Services Textile and Apparel Procurement Agency (ASTAPA), an agency of the United States, to manufacture for the United States 32,000 duffel bags, at a price of 68¢ each, for a total price of $21,760.

By May 1, 1953 none of these bags had been delivered to the United States. On that date the United States, Production, Inc. and Small Defense Plants Administration (SDPA), another agency of the United States, entered into a so-called tripartite agreement, under the terms of which SDPA was substituted for Production, Inc. as prime contractor on the duffel bag contract. The purpose of this new arrangement was to enable Production, Inc. to get financial help from SDPA to enable it to complete the work on the duffel bags.

On the same date, May 1, 1953, Production, Inc. entered into a subcontract with SDPA under which Production, Inc. was to manufacture the duffel bags called for by the prime contract. Under this subcontract it was agreed that the contracting officer might make partial payments to Production, Inc. in advance of delivery of the duffel bags. During the period from May 1, 1953 through June 30, 1953 SDPA made eight partial payments to Production, Inc. totaling $10,103.22.

It was also agreed by SDPA and Production, Inc. that Production, Inc. would employ a bookkeeper satisfactory to SDPA, that checks on the bank account of Production, Inc. were to be signed jointly by this bookkeeper and a duly authorized officer of the corporation, and that corporation funds were not to be disbursed without prior approval of SDPA as represented by Mr. C. L. Macredie of its Boston office. Pursuant to this agreement, one William F. Landry was appointed as bookkeeper, and checks on the account of Production, Inc. were to be signed by Landry and Aaron Scolnick.

From May 1, 1953 through July 3, 1953 Production, Inc. continued work on the manufacture of duffel bags and also of parachutes which it was making for the United States under another subcontract. The factory closed on July 3 for a vacation and reopened on July 13. On July 14 the United States cancelled the contracts and Production, Inc. closed the factory.

Shipments of duffel bags were made as follows: 2800 bags on May 29, 1953, 4000 bags on June 19, 1953, and 2880 bags on July 20, 1953. The July shipment consisted of the manufactured bags found on the premises by representatives of SDPA after termination of the contracts. Invoices for these shipments were signed by Aaron Scolnick, but were actually prepared by Landry or someone in the office acting under his direction. Each invoice named Production, Inc. as prime contractor rather than SDPA.

Payment for the May 29 shipment was made to SDPA and is not involved in the present action. Payment for the June 19 shipment was made by a check of the United States in the amount of $2717.28 dated August 10, 1953 and payable to Production, Inc. Payment for the July 20 shipment was made by a check of the United States in the amount of $1886.44 dated September 10, 1953 and payable to Production, Inc. Both of these checks were received by Aaron Scolnick and deposited to the account of Production, Inc. with the Union National Bank of Lowell on August 18, 1953 and September 17, 1953, respectively. At the time of the deposit of the first of these checks on August 18, 1953 the balance in the account was $7.28. No other deposits except these two checks were made to the account on or after that date. The balance in the account was reduced to $74.00 when it was closed out on December 22, 1953. Therefore the applications of the funds represented by these two checks is substantially represented by the checks

upon the Production, Inc. account cashed after August 18. While some of these checks are missing, the application of these funds can be substantially accounted for.

A payment of $1250 was made to Hyman Scolnick by a check on the Production, Inc. account. In March, 1953 Aaron borrowed $1500 from the Union National Bank of Lowell on a series of six notes. Hyman was a co-signer on these notes and the notes were paid as they became due by transfers from Hyman's account with the bank. Aaron's testimony was that the loan was made for the benefit of Production, Inc. to enable it to meet its payroll, and that the $1250 check was given to Hyman to reimburse him for payments made on the notes.

There was another check for $1166.67 drawn to "Payroll" and cashed by Aaron. When Production, Inc. ceased work on July 14 it owed wages to its workers for the last one or two weeks of work. On complaint of some of these employees an investigation was begun by an inspector of the Massachusetts Department of Labor and Industries. Aaron testified in his deposition that he was told by the inspector that these workers had to be paid or he would go to jail. On August 7 Aaron sent to the inspector registered checks purchased from the Union National Bank and payable to 31 of these employees. The total amount of these checks was $1,113.25. Aaron testified that the $1116.67 check was to reimburse him for such payments. He also testified that another check on the Production, Inc. account, in the amount of $1750.39, cashed on September 17, 1953, after deposit of the second United States check for $1886.44 was similarly made out to reimburse him for other payments made by him, chiefly for wages due to employees. Other checks cashed on the account which can be identified are one

to Landry for $70 for wages owed to him, and one for $200 to an attorney which Aaron said was in payment for legal services rendered to Production, Inc.[1]

Payment for the duffel bags in the June 18 and July 20 shipments was due to SDPA as prime contractor, and not to Production, Inc., and the checks of August 10, 1953 and September 10, 1953 were made payable to Production, Inc. by mistake. At the time these checks were received there was no money due to Production, Inc. from the United States. Production, Inc. went into bankruptcy in October, 1953 and the United States has recovered no part of these payments.

So far as applicable here, 31 U.S.C.A. § 231 provides:

"Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damage shall be sued for in the same suit."

■ On depositing each of these checks issued by the United States to Production, Inc. in the bank to the ac-

1. All these checks bore a signature purporting to be that of Landry as well as the signature of Aaron Scolnick. Landry denied signing any of these except the one to him for $70 which he said was due him for unpaid wages. Scolnick testified that sometime in August Landry signed a number of blank checks which Scolnick used in making the various payments listed above.

count of that corporation, Aaron Scolnick presented or caused to be presented a claim for money on behalf of Production, Inc. which was false and fictitious in that Production, Inc. had no valid claim against the United States for any money and the checks had been issued by mistake. Aaron Scolnick knew that each of these checks was a false and fictitious claim. He knew that as a result of the May 1, 1953 agreement Production, Inc. was no longer a prime contractor with the United States and was not entitled to receive payment from the United States of the price of any duffel bags which had been shipped to the United States. He knew that any payment to which it was entitled would be from SDPA under the subcontract, that it had already received in partial payment $10,103.22, an amount greatly in excess of $6,582.40, the total contract price of all the duffel bags which had been manufactured and shipped under the subcontract. It cannot be found that in these circumstances Aaron Scolnick had any honest belief that these checks represented payments which the corporation was entitled to receive from SDPA on its subcontract. Consequently, the United States is entitled to recover from Aaron Scolnick on Count 1, based on the August 10 check for $2,717.28, twice the amount of this check plus $2000, or a total of $7434.56, and similarly on Count 2 based on the September 10 check for $1,886.44, a total of $5,772.88.

■ On its alternative claims for money paid by mistake the United States would also be entitled to recover against Aaron Scolnick. The payments represented by these checks were clearly made by the United States as the result of a mistake of fact as to who was the prime contractor entitled to payment for the duffel bags. While the payment was made directly to Production, Inc., Aaron Scolnick by depositing these checks to the account of the corporation appropriated to the corporation and thus placed in his own control money to which he knew the corporation was not entitled.

Thereafter he caused these funds in the account of the corporation to be paid out to him or for his benefit by way of reimbursement to himself of payments he had made or in satisfaction of obligations as to which he might be legally or morally liable. His contention is that all these payments were in some way obligations of the corporation. Assuming, however, that as between him and the corporation he was entitled to cause the corporation to make these payments or to reimburse him for such of these payments as he made himself out of funds belonging to the corporation, this is no justification for so applying funds which while deposited in the account of the corporation were, as he well knew, funds which did not belong to the corporation but to the United States. Hence the United States is alternatively entitled to recover on Counts 3 and 4 from Aaron Scolnick the amounts of the two checks, viz. $2,717.28 and $1,886.44.

■ Hyman Scolnick was the father of Aaron Scolnick. There was no evidence that he had any connection with Production, Inc. or took any part in its affairs, except for his part in connection with the loan made to his son by the bank in March, 1953 which Aaron says was for the benefit of the corporation. As to the claims of the United States under § 232, there was no showing that Hyman had any part in the presentation of the false claims. He received nothing from the proceeds of the September 10 check. He did receive a payment of $1250 which came from the proceeds of the August 10 check. However, there was no evidence that Hyman had any knowledge of the transaction between the United States and Production, Inc. or that he knew that the money paid him did not come from funds rightfully belonging to the corporation.

Judgment will be entered for the United States against defendant Aaron Scolnick in the amount of $13,207.44. Judgment will be entered for defendant Hyman Scolnick on all counts of the complaint.