## ORDER ON FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** having come before the Court on Plaintiffs' claims under Sections 7 and 9 of the Endangered Species Act, and their Applications for Preliminary and Permanent Injunctive Relief and Declaratory Relief.

The Court having conducted a hearing on Plaintiffs' Motion for Preliminary Injunctive Relief on August 7 and 8, 1996;

The Court having held oral argument on Plaintiffs' and Defendants' Cross–Motions for Summary Judgment on October 31, 1997;

The Court having consolidated the preliminary injunction hearing and final hearing pursuant to Fed.R.Civ.P. 65;

The parties having agreed that a final trial is unnecessary as they had submitted all of the relevant evidence in support of their positions through motions, memorandums of law, supporting exhibits, and testimony presented during the August 7 and 8, 1996 hearings;

The Court having reviewed the submissions of the parties and entire record of the case; and

The Court having entered pursuant to Federal Rule of Civil Procedure 52(a) its findings of facts and conclusions of law in the Opinion filed on this date;

It is on this 2nd day of July, 1998 **HEREBY**

**ORDERED** that the Plaintiffs' Motion to Strike Defendants' Exhibit 22 and Motion to Strike Defendants' Exhibit 23 are **DENIED AS MOOT**; and it is further

**ORDERED** that National Wildlife Motion for Leave to Submit Brief Amicus Curiae is **DENIED**; and it is further

**ORDERED** that the Plaintiffs' Objection to Magistrate's Order Precluding Discovery is **DENIED**; and it is further

**ORDERED** that Plaintiffs' Applications for Permanent Injunctive Relief and Declaratory Relief are **DENIED** and that Judgment is hereby entered in favor of Defendants; and it is further

**ORDERED** that both the Plaintiffs' and Defendants Cross Motions for Summary Judgment are **DENIED AS MOOT**; and it is further

**ORDERED** that the Plaintiffs' Renewed Motions for Summary Judgment are **DENIED AS MOOT**; and it is further

**ORDERED** that this Court will continue to maintain jurisdiction.

**UNITED STATES of America ex rel. Diane HASKINS, Beverlee Ralph, and Tamara Livingston, and Diane Haskins, Beverlee Ralph, and Tamara Livingston, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**OMEGA INSTITUTE, INC.; Lee E. Cobleigh; Franklin Burke; Dr. Clarita Eusebio-:Kelly; Raymond Papin; Adele Winter; Joseph Marra; and Sharon E. Gremmels, Defendants.**

**Civil No. 95–265(SSB).**

United States District Court,
D. New Jersey.

July 2, 1998.

Law Firm of Philip Stephen Fuoco, Haddonfield, NJ by Philip Stephen Fuoco, Joseph A. Osefchen, for Plaintiffs.

Florio & Perucci, P.C., Piscataway, NJ by Michael J. Perrucci, Edward J. Boccher, Glenn A. Clouser, Eltia I. Montano, Michele A. Daitz, for Defendants.

U.S. Dept. of Justice Civil Division, Washington, DC by Sara Winslow, Stephen D. Altman, Michael F. Hertz, for U.S. amicus curiae.

## OPINION

BROTMAN, District Judge.

### A. *Background*

Defendant Omega Institute, Inc. (hereinafter "Omega") was established in 1980 and is a private, post-secondary school providing alternative adult education in various fields, including allied health, legal support services, hospitality, business, and computer repair. Omega's curriculum and programs have been developed under the guidelines of the New Jersey Department of Education and have been periodically reviewed, evaluated, and approved by the Department of Education and by the school's accrediting agency, the Accrediting Council for Independent Colleges and Schools ("ACICS"). Most of the courses at Omega are approved for recommended credit at various local colleges, and the school has been successful in retaining its accreditation on a yearly basis.

The present action focuses squarely on Omega's paralegal/legal support training programs. Omega points out that it has offered these programs since 1980 and that the curriculum, programs, faculty, number of instruction hours, and support staff have evolved and changed over the years. Defs.' Br. in Opposition to Class Certification at 5–6. Some courses in these programs, in fact, have been entirely phased out. *Id.* at 6. Because of many changes over the years, defendants contend that the individual experiences of Omega students were different as well, depending upon when they were enrolled. *Id.* at 7. The plaintiffs in this action contend, however, that their experiences at the school were not simply uneven. Rather, they claim that Omega shortchanged them in a variety of ways, and have brought suit to redress their grievances.

The United States Department of Justice's Civil Division, after originally commencing this action, filed with the Court on October 6, 1995 a Notice of Election to Decline Intervention. The named plaintiffs—stepping into the shoes of the Government—now bring this *qui tam* action on behalf of themselves and other former and current Omega paralegal students. They argue that Omega operated by making false statements regarding its paralegal training in documents it filed with the U.S. Department of Education, the New Jersey Department of Education, and Job Training Partnership Act (" JTPA") bodies. Plaintiffs assert that written documents Omega provided to its prospective students contained these false statements and were consistently the same, regardless of whether the intended recipient was a student or a government entity. More specifically, plaintiffs allege that the actual number of instruction hours they received, the school's attendance policies, and the quality of the school's instructors which they observed for themselves were not in keeping with the written statements Omega promulgated. Essentially, plaintiffs argue that the written statements in question were greatly exaggerated when compared to their actual educational experiences at the school.

On January 14, 1997 plaintiffs filed a nine-count First Amended *Qui Tam* and Class Action Complaint demanding a jury trial. In their Complaint, plaintiffs brought the following claims: Ct. I, *qui tam* on behalf of the United States, pursuant to 31 U.S.C. § 3729(a)(1) and (2), the False Claims Act ("FCA"), (¶¶ 208–14); Ct. II, *qui tam* on behalf of the United States, pursuant to 31 U.S.C. § 3729(3), (¶¶ 215–20); Ct. III, federal Civil RICO, 18 U.S.C. § 1962(c), (¶¶ 221–31); Ct. IV, conspiracy to violate RICO, 18 U.S.C. § 1962(d), (¶¶ 232–39); Ct. V, New Jersey RICO, *N.J.S.A.* 2C:41–1 *et seq.*, (¶¶ 240–44); Ct. VI, the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1, *et seq.*, (¶¶ 245–48); Ct. VII, common-law fraud, (¶¶ 249–54); Ct. VIII, breach of duty to third-party beneficiaries, (¶¶ 255–59); and Ct. IX, breach of contract, (¶¶ 260–64).

Following a May 1, 1997 Order to Show Cause hearing, the Court, in an opinion and order dated May 6, 1997 denied plaintiffs' application for findings of contempt and other injunctive relief. Subsequently, in a November 25, 1997 opinion and order, the Court denied plaintiffs' motion for class certification pursuant to FED. R. CIV. P. 23(a) and (b). More recently, on May 4, 1998, plaintiffs' counsel filed an action in the Superior Court of New Jersey, Gloucester County, captioned *Raggio, et al. v. Omega Institute, et al.*,

GLO–L–849–98, seeking class certification. On May 6, 1998, plaintiffs filed a Notice of Voluntary Dismissal of Counts III through IX of the First Amended *Qui Tam* Complaint. By virtue of an amended scheduling order filed May 28, 1998, Magistrate Judge Joel B. Rosen extended the dispositive motion deadline to June 10, 1998. The Joint Final Pre–Trial Order was entered by the Magistrate Judge on June 29, 1998.

In the interim, the Court has received a flurry of motions. Presently before the Court and ripe for decision are (1) a motion for summary judgment by defendants Omega Institute, Lee E. Cobleigh, Franklin Burke, Clarita Eusebio–Kelly, Raymond Papin, Adele Winter, Joseph Marra, and Sharon E. Gremmels filed December 16, 1997; (2) a motion to dismiss, or in the alternative for a stay pending an administration proceeding currently underway by the United States Department of Education ("DOE"), also filed December 16, 1997; (3) a motion by the abovenamed individual defendants for summary judgment, filed June 10, 1998; and (4) a motion by all defendants "for Summary Judgment to Limit the Scope of Plaintiffs' First Amended *Qui Tam* Complaint and to dismiss Plaintiff Beverlee Ralph's Complaint," filed June 10, 1998. Also before the Court is a motion by defendants to impose certain conditions upon the plaintiffs' voluntary dismissal of Counts III through IX.[1]

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* 28 U.S.C. § 1367 confers supplemental jurisdiction upon the Court over plaintiffs' state statutory and common-law claims. Venue in the District of New Jersey is proper pursuant to 28 U.S.C. § 1391, in that the actions complained of arose in this district and all named plaintiffs reside in Gloucester County, New Jersey.

## B. Discussion

### I. Defendants' Motion to Dismiss, or Alternatively For a Stay

The plaintiffs in this case are students of Omega's paralegal training program. They specifically allege that Omega violated the False Claims Act, 31 U.S.C. §§ 3729–3733, by obtaining financial aid funds for its paralegal training program while it was ineligible to receive such funds.

In 1995, the DOE began an enforcement investigation or program review of Omega relating to its compliance with federal funding regulations, and to investigate Omega's administration of Title IV student financial assistance programs. This investigation is still ongoing. Therefore, defendants, relying on the doctrine of "primary jurisdiction," have filed a motion either to dismiss without prejudice or, in the alternative, for a stay pending completion of the DOE's enforcement action.

### A. The Department of Education's program review does not negate the relators' rights to proceed with their qui tam action

Under 31 U.S.C. § 3730(a), the responsibility for bringing civil actions for false claims rests with the Attorney General. A private individual, however, may also bring a civil action for a false claims violation on his or her own behalf and on behalf of the United States government.[2] Such an action is

---

1. In a separate opinion issued this date in a companion case, *Raggio, et al. v. Omega Institute, et al.*, 98–cv2782 (SSB), the Court addresses the following additional motions made by the parties: (1) a Notice of Removal of a case filed in New Jersey Superior Court, Gloucester County, *Raggio, et al. v. Omega Institute, et al.*, GLO–L–849–98 filed June 9, 1998, or alternatively for the Court to assume jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651; (2) a motion by defendants filed June 19, 1998 pursuant to FED. R. CIV. P. 42 to consolidate *Raggio, et al. v. Omega Institute, et al.*, GLO–L–849–98 with the within matter, *United States of America, ex rel Haskins, et al. v. Omega Institute, et al.*, 95–cv–

265 (SSB); and (3) a motion filed June 23, 1998 by counsel for plaintiffs to remand GLO–L–849–98 to state court for lack of subject matter jurisdiction and for costs and fees associated therewith.

2. The provenance of the modern *qui tam* action has roots in ancient common law. *"Qui tam"* takes its name from the Latin phrase *"qui tam pro domino rege quam pro si ipso in hac parte sequitur,"* meaning "who sues on behalf of the King as well as for himself." Black's Law Dictionary 1251 (6th ed.1990) (cited in *United States, ex rel Dunleavy v. County of Delaware,* 123 F.3d 734, 738 n. 6 (3d Cir.1997)).

called a *qui tam* action and the plaintiffs are called "relators." In this situation the government has the option to intervene.

■ When the government declines to intervene in the *qui tam* action, case law provides that a relator's claim should not be stayed or dismissed without prejudice even though the government may pursue an alternate remedy. In *United States ex. rel. Dunleavy v. County of Delaware*, 123 F.3d 734 (3d Cir.1997), the Third Circuit Court of Appeals held that the Department of Housing and Urban Development's (HUD) settlement of a dispute with Delaware County in Pennsylvania regarding the County's allegedly improper retention of HUD's funds did not impair the relator's right to pursue a *qui tam* action under the False Claims Act (FCA).

In *Dunleavy*, Judge Roth opined that she was uncertain whether the U.S. Attorney and HUD intended the settlement with the County to extinguish the government's claims under the FCA or whether the settlement addressed a less serious transgression such as misrepresentation. *Id.* at 738. Nevertheless, she explained that resolving the uncertainty was immaterial because the government never exercised its right to intervene into the relators' FCA *qui tam* action. Therefore, the settlement between HUD and the County did not negate the relator's ability to proceed independently with his *qui tam* action. *Id.* at 739. In so finding, the court agreed with the Eleventh Circuit's conclusion that the FCA's purpose is not limited to punishing the wrongs against the public; the FCA also fills a remedial capacity in redressing injury to the individual relator. *Id.* at 739.

As noted above, the government has declined to intervene in this case. Instead, the government, through the Department of Education, has elected to conduct a program review of Omega Institute's administration of federal student financial aid programs and has demanded repayment. Based upon Third Circuit case law, the DOE's pending administrative program review does not negate the relators' rights to proceed with this *qui tam* action.

### B. The doctrine of "primary jurisdiction" cannot appropriately be applied to this case

■ The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *MCI Telecomm. Corp. v. Bell of Pennsylvania*, 71 F.3d 1086, 1108 (3d Cir. 1995) (citation omitted). It applies where a claim that is originally cognizable in court requires the resolution of issues that, under a regulatory scheme, have been placed within the special competence of an administrative body. *U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The primary jurisdiction doctrine does not deprive a court of its jurisdiction, but it requires it to suspend further judicial proceedings, pending referral of the issues for an administrative ruling. *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

There are strong policy reasons for applying the doctrine of primary jurisdiction in an appropriate case. Initially, the doctrine promotes consistency and uniformity, particularly where development of the law depends upon administrative policy. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). Second, an administrative agency may be uniquely qualified to resolve certain complexities that are outside the conventional experience of the courts. Finally, judicial economy will be served where the dispute may be decided within the agency, thus obviating the need for court intervention.

Nevertheless, in *Luckey v. Baxter Healthcare Corp.*, 1996 WL 242977 at *4–7 (N.D.Ill. May 9, 1996), the court declined to apply primary jurisdiction to relator's claim that the defendant had failed to test blood products properly, notwithstanding the Food and Drug Administration's general jurisdiction over the subject matter. The court relied upon the government's *amicus curiae* brief which presented sound bases for refusing to invoke primary jurisdiction.[3] The Department of Justice argued:

---

3. Although the government had a right to inter- vene as a plaintiff in this case, it chose not to do

that there was no need for judicial deference to agency authority in this case, noting that the FDA has no authority to adjudicate or provide relief for a false claims action. Moreover, the government points out that theFDA has not come before this court to assert any perceived administrative prerogative, and that although the government has the authority under 31 U.S.C. § 3730(c)(5) to move the matter to an administrative agency, or to dismiss this action under 31 U.S.C. § 3730(c)(2)(A), it has declined to do so. *Id.* at *5.

■ In this case, the Department of Education administers student financial aid programs. The DOE, with its program review, is pursuing a matter with regard to defendants that is based on the same facts alleged in plaintiffs' *qui tam* suit but does not involve allegations of a false or fraudulent claim.[4] In such an instance, the relator has no right to participate or to share in the government's alternate recovery because, under 31 U.S.C. § 3730(c)(5), the relator "shall have the same rights in such [alternate] proceeding as such person would have had if the [district court] action had continued."

In this case the DOE has not investigated false or fraudulent claims, and lacks authority to do so. The exclusive authority to adjudicate FCA and fraud claims rests with the Department of Justice and the Attorney General.[5] The DOJ has, additionally, authorized the *qui tam* relators to pursue the action for fraud claims in the name of the United States. Furthermore, in *United States v. General Dynamics Corp.*, 828 F.2d 1356,

1363 (9th Cir.1987), the court explained that in order for primary jurisdiction to apply, the particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question.

Moreover, even if the DOE had the authority to adjudicate FCA claims, the DOE could not exercise this jurisdiction because the government has declined to intervene. In *Dunleavy*, Judge Roth found the legislative history accompanying the 1986 Amendments to the FCA instructive. She cited the report which followed the Senate version of the amendments, which Congress passed in lieu of those in the House bill, explaining the Government's right to proceed administratively as an alternate remedy to an FCA action.. The report stated:

> While the Government can compel dismissal or settlement of a qui tam action if it formally intervenes, 31 U.S.C. § 3730(c), Congress believed that"if the Government declines to intervene in a qui tam action, it is estopped from pursuing the same action administratively or in a separate judicial action."

*Dunleavy*, 123 F.3d at 739 (quoting S. Rep. 99–345, 99th Cong., 2d Sess. 27, reprinted in 1986 U.S.C.C.A.N. 5266, 5292).

■ In *Dunleavy*, the Third Circuit determined that the plaintiff, if found to be a proper relator, had an interest in pursuing his claim independently of the government, which elected not to intervene. *Id.* Where the government declines to so intervene, it

so. However, following the Court's granting of leave on June 2, 1998, the government filed an *amicus curiae* brief opposing the motion to dismiss based on primary jurisdiction or exhaustion of administrative remedies.

4. This case is therefore unlike *Knight v. James,* 514 F.Supp. 567 (M.D.Ala.1981), in which the court applied the primary jurisdiction doctrine to a stay a pending district court action where there was an "ongoing administrative process designed to remedy the precise problem which plaintiffs [were] allegedly seeking to remedy in [the district court] suit." *Id.* at 569. *Compare* with *United States v. Institute of Computer Tech.,* 403 F.Supp. 922, 924–925 (E.D.Mich.1975) (primary jurisdic-

tion doctrine did not apply to FCA suit where agency had no ability to provide an adequate remedy for FCA claim) *and Ryan v. Chemlawn Corp.,* 935 F.2d 129, 131 (7th Cir.1991) (district court erred in applying the primary jurisdiction doctrine to personal injury case where administrative agency was unable to provide plaintiff with the monetary relief sought).

5. *See* 28 C.F.R. Part O Subpart Y (1993) (authority to file FCA suit and compromise certain FCA actions delegated to Assistant Attorney General for the Civil Division from the Attorney General) *and* 31 U.S.C. § 3730(a) (delegates exclusive authority to the Attorney General to adjudicate FCA claims).

cannot compromise plaintiff's claim, even if it settles its own claim against a defendant. *Id.* In the case at bar, no claim by the government has even been settled; it has, quite simply, declined to become actively involved, its *amicus* filing notwithstanding. Defendants' reliance on the doctrine of primary jurisdiction to stay the action in this Court is therefore misplaced, and their motion to dismiss or alternatively for a stay will be denied.

## II. The Individual Defendants' Summary Judgment Motions

In three separate briefs (all encompassing one motion per se), defendants move for summary judgment in favor of the named individual Omega employees and officers—specifically, for summary judgment in favor of defendants Cobleigh and Burke; Kelly and Gremmels; and defendants Papin, Winter, and Marra. Although the briefs are similar, the merits on each differ and will be addressed in turn.

### A. The Standard for Summary Judgment

The standard for granting a motion for summary judgment is a stringent one. FED. R. CIV. P. 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir.1996); *Singer v. Land Rover North Am., Inc.,* 955 F.Supp. 359, 360 (D.N.J.1997). In deciding whether there is a disputed issue of material fact, a court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin,* 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (declaring that nonmovant may not "rest upon mere allegations, general denials, or vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," a court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### B. Defendants Cobleigh and Burke's Motion for Summary Judgment

Defendants Cobleigh and Burke move for summary judgment, claiming (1) that plaintiffs' complaint contains no allegations against them in their individual capacities but only nominally as officers of Omega; and (2), that because Cobleigh and Burke acted "within the scope of their employment" they cannot be held individually liable for their actions under the FCA.

In support of their first point, defendants claim that the Complaint merely alleges the offices Cobleigh and Burke held at Omega. Defendants contend that there are no facts or allegations in the Complaint regarding the personal activities or liability of Burke and Cobleigh. They cite two cases to support their assertion that when a claim is brought against an individual solely on the basis of his or her position as a corporate officer, that

claim should be dismissed against the officer in his or her individual capacity.[6]

Defendants' assertion that plaintiffs' Complaint rests its allegations of Cobleigh's and Burke's individual liabilities solely on their statuses as officers of Omega is without merit. For example, ¶ 131 of the Complaint states that "at all relevant times, the defendants [including Cobleigh and Burke] were aware that their claims and supporting documents were misrepresenting the actual number of course hours conducted at the paralegal school. These misrepresentations were made with the purpose of causing false claims to be paid to defendants and did cause such claims to be paid." Compl. at 27. The preceding paragraphs of the Complaint recite specific allegations of defendants' false statements to the government regarding the hours of instruction offered at Omega. *Id.* at 26–27. The Complaint alleges fraudulent acts by *all* defendants, which includes Cobleigh and Burke.[7] It does not merely implicate Cobleigh and Burke by virtue of their being officers of Omega. Rather, the Complaint alleges that they themselves, along with the other individually named defendants, committed fraudulent acts. Because plaintiffs' Complaint alleges wrongdoing against all defendants individually, defendants' first argument is without merit.

Defendants further argue that "even if plaintiffs now attempt to assert a right to pierce Omega's corporate veil and seek personal liability of Omega's officers, such arguments must fail because plaintiffs have failed to meet the pleading requirements of [Fed. R.Civ.P. 9(b) ]." First, as explained *supra,* at note 6, this case has nothing to do with veil-piercing. Second, Rule 9(b) states that "in all averments of fraud or mistake, *the circumstances constituting fraud or ·mistake shall be stated with particularity* " (emphasis supplied). Rule 9(b) says nothing about pleading requirements for circumstances justifying veil-piercing.

■ In their Complaint, plaintiffs do not rely on "boilerplate" or "conclusory" allegations of fraud. *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1417–1418 (3d Cir.1997). Rather, they plead with specificity the approximate time and "content of the false misrepresentations, the fact[s] misrepresented," the damages resulting from the alleged fraud, and the person or persons who made the misrepresentations. *See United States ex rel. Long v. SCS,* 999 F.Supp. 78 (D.D.C.1998). Further, in this circuit, the pleading standard of Rule 9(b) is relaxed somewhat where the factual information required to meet it is within the defendant's exclusive knowledge or control (e.g., where the defendant is a corporation and discovery is required to obtain the necessary information). *Burlington Coat Factory,* 114 F.3d at 1418. Plaintiffs have met the required pleading standards set forth in Rule 9(b).

■ Defendants' second argument for summary judgment in favor of Cobleigh and Burke must fail as well. They argue that since Cobleigh acted ·at all times within the scope of his employment, he is insulated from liability. Defendants contend that plaintiffs have not advanced any facts that Cobleigh was not acting within the scope of his employment, and hence Cobleigh is entitled to judgment as a matter of law. In support of their contention that an individual defendant cannot be held personally liable for acts com-

---

**6.** Specifically, defendants cite *Central Penna. Teamsters Pension Fund v. McCormick Dray Line, Inc.,* 85 F.3d 1098, 1109 (3d Cir.1996) (according to defendants, "holding that where there are no allegations in a complaint that the corporate veil should be pierced, any claims against a corporate officer only on the basis of his position as a corporate officer will be dismissed"), and *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *Central Penna. Teamsters* was a case arising under ERISA involving attempted recovery of delinquent contributions to a pension fund. 85 F.3d at 1099–1102. And in *Graham,* plaintiffs sought to hold a State Police Commissioner individually liable un-

der § 1983 for a warrantless raid executed by the state police. 473 U.S. at 159, 105 S.Ct. 3099. Both cases are not analogous to the instant case. First, this case has nothing to do with "piercing ·the corporate veil." Second, plaintiffs do not attempt to attach liability to Cobleigh and Burke solely on the basis of their status as officers of Omega.

**7.** As it turns out, plaintiffs have produced documents furnished to the U.S. Department of Education by both Cobleigh and Burke that contain allegedly false information. Pl. exhs. F and I.

mitted within the scope of employment, they rely on *United States v. Entin,* 750 F.Supp. 512 (S.D.Fla.1990).

*Entin,* however, does not support defendants' position. In *Entin,* the United States brought an FCA action against a bank and three corporate officers who had made false representations in order to obtain an SBA loan. Defendants herein contend that the bank's vice president was not held personally liable; however, the bank's vice president was not a defendant in the lawsuit. Contrary to defendants' representation, then, the *Entin* court absolutely *did not* hold that the vice president was not personally liable; rather, the vice president's acts were deemed to impute liability to the bank. *Id.* at 519. Further contradicting defendants' argument, the *Entin* court held that the three corporate officers named as defendants *were* jointly and severally liable for damages under the FCA. *Id.* at 520.

Defendants also cite *Sears Roebuck & Co. v. Ragucci,* 203 N.J.Super. 82, 495 A.2d 923 (Law Div.1985). However, *Ragucci* dealt with the question of whether an authorized user of a credit card who was not the actual holder of the credit card could be held personally liable for purchases made. Any analogy between *Ragucci* and the instant case is tenuous. Therefore, the law cited by defendants does not support their position, and the bulk of law directly refutes defendants' contention.

The fallacy of defendants' arguments stems from a misconception about the way in which liability is allocated along agency lines. No lesser authority than Judge Learned Hand has held that "an agent does not cease to be acting within the scope of his authority when he is engaged in a fraud on a third person." *Ricketts v. Pennsylvania R. Co.,* 153 F.2d 757 (2d Cir.1946). However, contrary to defendants' argument, this principle from Judge Hand stands for the proposition that an agent's fraudulent acts committed "in the scope of his authority" impute liability to the principal, *not that the agent is also not personally liable. See United States v. Fox Lake State Bank,* 240 F.Supp. 720 (N.D.Ill. 1965), *rev'd on other grounds,* 366 F.2d 962 (7th Cir.1966).

More fundamentally, as a matter of fact, defendants' argument that they acted within the scope of their employment is mistaken. While defendants' positions with Omega may have required them to file, or cause to be filed, certain documents with the government, their positions surely did not require them to file or cause to be filed *false* documents with the government, as plaintiffs allege. Therefore, both as a matter of law and as a matter of fact, defendants' "scope of employment" argument is without merit as to each and every defendant in this action.

It is well-established both by this circuit's case law and the Restatement that a corporate officer can be held individually liable for his or her intentional torts (such as fraud). The Restatement (Second) of Agency, § 348, provides:

> An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.

Section 348 of the Restatement was cited with approval recently in *Weintraub Brothers Company v. Attraction House Company,* Civ. A. No. 94–6673, 1995 WL 365450 at *3 (E.D.Pa. June 13, 1995). This circuit followed a path along similar lines in *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602 (3d Cir. 1978). In *Donsco,* the court held that a corporate officer was "individually liable for the torts he commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Id.* at 606. The holdings in *Donsco* and *Weintraub Brothers* appear to put to rest any question that an officer of a corporation may be held personally liable for his or her intentional torts. *See also Bechtel v. Liberty Nat'l Bank,* 534 F.2d 1335 (9th Cir.1976) (citing § 328 of the Restatement with approval); *United States v. Aerodex, Inc.* 469 F.2d 1003 (5th Cir.1972); *United States v. Scolnick,* 219 F.Supp. 408 (D.Mass.1963), *aff'd,* 331 F.2d 598 (1st Cir. 1964); *Horizon Financial, F.A. v. Hansen,* 791 F.Supp. 1561 (N.D.Ga.1992); *United States v. Cherokee Implement Co.,* 216 F.Supp. 374 (N.D.Iowa 1963) (holding that

"both the corporation *and those working for it* or running it may be liable, but it appears that in order for the individual to be liable, he must have been part of the cause which resulted in the false claim"). *Cherokee Implement* further stands for the proposition that not merely officers, but employees as well, may be held personally liable for their own tortious acts. It is axiomatic at a basic, common-sense level, therefore, that a wrongdoer cannot receive a free pass on liability for intentional misconduct simply by claiming to be immunized by the corporate shield.

*Donsco* also demonstrates that defendants' references to "veil-piercing" are inapplicable. That case held that the personal liability arising from being a participant in a wrongful act is "distinct from the liability resulting from the 'piercing of the corporate veil.'" *Id.* The reason for 'piercing' is to hold an owner of a corporation liable where the corporation is undercapitalized, where the corporation is less than a *bona fide* corporation, when the corporation is a mere alter ego of the individual, or where the corporate form is merely being used to perpetrate a fraud. *Id.* As in *Donsco*, the absence of such findings does not affect the individual officers' liability. *See Id.* Regarding all defendants, and not just Cobleigh and Burke, defendants rely heavily on the assertion that an agent of a corporation acting within the scope of his or her employment cannot be held personally liable to third parties.

Hence, defendants' second argument for summary judgment in favor of defendants Cobleigh and Burke is without merit. For the same reasons, defendants' arguments for summary judgment with respect to all other defendants must fail to the extent that such arguments are based on the ground that these defendants are insulated from liability because they are employees or officers, or because they were acting within the scope of their employment.

To summarize, plaintiffs' Complaint does not allege liability against Cobleigh and Burke solely based on their statuses as corporate officers, but rather attributes specific fraudulent acts to all defendants including Cobleigh and Burke. Furthermore, defendants' contention that Cobleigh and Burke,

as corporate officers, cannot be held individually liable for their tortious acts is unsupported by the case law, even that cited by defendants. Therefore, the court concludes that defendants Cobleigh and Burke's are not entitled to judgment as a matter of law.

### C. Defendants Kelly and Gremmels's Motion for Summary Judgment

Defendants Kelly and Gremmels move for summary judgment based on the argument that they were acting at all times within the scope of their employment when they filed documents with the government or prepared materials they knew would be submitted to the government. Defendants cite the same cases as in the previously discussed motion (*Entin*) in support of their motion. The inapplicability of *Entin* to the instant case has been discussed and rejected.

■ Since as a matter of law Kelly and Gremmels are not shielded from liability, the summary judgment inquiry must turn to the factual support for plaintiffs' claims against them. As evidence, plaintiff has submitted two applications for JTPA funds signed by defendant Kelly that allegedly contain false information. Therefore, defendant Kelly's liability for fraud under FCA involves a genuine issue of material fact. Furthermore, defendant Gremmels, as Financial Aid Director, is alleged to have known that Omega was in the practice of submitting false information to the government in order to obtain government funding. Despite this, defendant Gremmels is alleged to have continued to prepare and sign individual federal financial aid filings for all Omega students, and to disburse the resultant federal funds. Therefore, the evidence of record demonstrates that there remain genuine issues of material fact as to whether defendant Gremmels is liable for fraud under the FCA. Defendants' rebuttals to these accusations are insufficient, thus making an award of summary judgment inappropriate on this record. Accordingly, the Court denies the motions of defendants Kelly and Gremmels for summary judgment.

### D. Defendants Papin, Winter and Marra's Motions for Summary Judgment

■ Defendants contend that Papin, as Admissions Director, Winter, as Placement Director, and Marra, as Paralegal Instructor, never submitted any claims to the government as required for a violation of § 3729(a)(1). Defendants also argue that plaintiffs have submitted no evidence suggesting that any of these three defendants made, used, or caused to be made or used a false record or statement to have a false or fraudulent claim paid or approved by the government, as required for a violation of § 3729(a)(2). Defendants further aver that plaintiffs have submitted no evidence suggesting that any of these three defendants conspired to defraud the government by getting a false or fraudulent claim paid as required for a violation of § 3729(a)(3). With respect to defendant Marra, plaintiffs have produced the sworn testimony of defendant Kelly, stating that defendant Marra prepared a course description containing allegedly false information concerning the course "Introduction to Paralegalism." This course description was used in a submission to the NJDOE as a prerequisite to receiving federal funds. Plaintiffs claim that Marra knew that this course description would be incorporated into Omega's government filings, but provide no evidence of this.[8] Nevertheless, questions concerning knowledge are genuine questions of fact that ought not be decided at the summary judgment stage. With respect to Count I (alleging violations of § 3729(a)(1) and (2)), defendant Marra's request for summary judgment should be denied.

■ However, Count II, alleging conspiracy under § 3729(a)(3) is a closer question. Plaintiff has merely established that Marra was the teacher of the course and prepared the course description. Plaintiff has shown no evidence of any collaboration or conspiracy between Marra and any other defendant to have a false or fraudulent claim paid by the government. See Blusal Meats, Inc. v. United States, 638 F.Supp. 824, 828 (S.D.N.Y.1986), aff'd, 817 F.2d 1007 (2d Cir. 1987). Absent a showing of actual conspiracy, or even a showing that might indicate the real possibility of such a conspiracy, the Court must grant summary judgment dismissing Count II of plaintiffs' complaint against defendant Marra.

■ Defendant Winter allegedly advised a teacher at Omega to hold classes for only four hours per day rather than the six hours reported in Omega's government filings. Whether this is evidence of a conspiracy under § 3729(a)(3) is a genuine issue of material fact for the jury to decide. Plaintiffs do not specifically counter defendants' motion for summary judgment with respect to § 3729(a)(1) and (2). Indeed, it does not appear that defendant Winter ever presented anything herself to the government as required for a violation of § 3729(a)(1). However, whether her actions caused false claims to be presented to the government remains a question of fact for a jury. For example, a reasonable jury could conclude that her instruction that class be held for less than the time reported to the government constituted *causing* a false claim to be presented.

■ Finally, defendant Papin has moved for summary judgment. Plaintiffs do not contend that Papin ever himself submitted anything to the government. Nor do they contend that he caused a false report to be submitted to the government.[9] Rather, plaintiffs contend that Papin was complicit in Omega's conspiracy to defraud the government. In support, plaintiffs claim that Papin was aware of the hours shortage because he was present at the staff meeting where it was discussed, and because he commented to a teacher about her classes being "longer then others." Further, plaintiffs contend that Papin acted overtly in furtherance of the fraud-

---

8. Plaintiff contends that defendant Kelly's deposition testimony shows that Marra knew his course description would be incorporated in Omega's government filings. Kelly's deposition testimony does not indicate this, however.

9. Plaintiffs do contend in their brief that Papin "has continued to cause documents to be submit-

ted which dispute the observations of both the relators *and* the U.S. DOE inspectors who investigated the relators' complaints. This, in and of itself, constitutes a violation of 31 U.S.C. § 3729(a)(4) and (7). However, no outstanding Counts in the Complaint allege violations of these sections.

ulent claims where he, as the Admissions Director of Omega, distributed the Omega course catalog containing the allegedly false information to students. This, the plaintiffs contend, ensured that Omega would have students, a required element for the receipt of federal funds. Considering this information, a reasonable jury could conclude that defendant Papin conspired to get false claims paid or approved by the government as required by § 3729(a)(3). Therefore, the Court denies the summary judgment motions of defendant Papin with respect to both Counts I and II.

### III. Defendants' Motion to Limit the Scope of Plaintiffs' Complaint and to Dismiss Beverlee Ralph's Complaint

On January 5, 1995, plaintiffs filed a *qui tam* complaint against Omega Institute, alleging, among other things, violations of the False Claims Act. On January 14, 1997, plaintiffs filed a first amended *qui tam* complaint. One of the three named plaintiffs in the instant litigation is Beverlee Ralph.

According to both parties, plaintiffs, either individually or through assistance of counsel, obtained DOE audit files through a Freedom of Information Act ("FOIA") request. This first request was in or about October of 1994. Plaintiffs also obtained DOE reports which mirror many of the allegations made in plaintiffs' complaint. Defs.' Br. at 4–8. In February, 1995 (after the initial complaint was filed but before the first amended complaint was filed) plaintiffs received additional audit information from the DOE. Further audit reports were received by plaintiffs in September of 1996.

Also relevant to the motions at bar, plaintiff Beverlee Ralph has stated in an affidavit accompanying the Complaint that, among other things, she has no personal knowledge of defendants submitting any claims whatsoever to the government. Defendants have thus moved to limit the scope of plaintiffs' *qui tam* Complaint and to dismiss plaintiff Beverlee Ralph.

They specifically seek to limit the plaintiffs' case to the periods of time during which plaintiffs were actually enrolled at Omega. They also move to dismiss plaintiff Beverlee

Ralph's complaint because Ms. Ralph herself knows of no acts by Omega that would establish a cause of action under the FCA. For the reasons that follow, the Court grants defendants' first request, but denies their second request.

### A. Defendants' Motion to Limit the Scope of Plaintiffs' Qui Tam Complaint

■ The FCA provides that a relator may bring a suit only when the relator is an "original source" of the information. § 3730(e)(4)(A); *United States ex rel. Stinson v. Prudential Insurance Co.*, 944 F.2d 1149, 1160 (3d Cir.1991). If a claim is based solely on information that has been publicly disclosed, the suit is barred (referred to as the "public disclosure bar"). *Id.* Defendants in the instant case allege that, because plaintiffs are not the "original source[s]" of information if they did not attend Omega at the time of the alleged acts, plaintiffs' Complaint must be limited to the times during which they were enrolled at Omega.

■ Indeed, defendants' argument is supported by the case law. "The paradigmatic 'original source' is a whistleblowing insider." *Id.* at 1161. While other persons (besides insiders) may obtain information from their own investigations and use it to bring a *qui tam* action, a relator must always be the original source of the information. *Stinson* holds that where a plaintiff's knowledge of information is neither "independent" nor "direct," the plaintiff cannot be deemed an original source of the information. *Id.*

■ Plaintiffs counter defendants' motion by stating, in effect, that the evidence obtained by the plaintiffs was amassed as a result of the *qui tam* complaint. They invoke *Dunleavy*, 123 F.3d 734, in support of this contention. The court in *Dunleavy* held that "administrative reports" *not prepared by the federal government* but by another agency *for* the federal government are not "public disclosures" under § 3730(e)(4)(A). *Id.* at 745. Since the reports the plaintiff in *Dunleavy* relied on were prepared by a county agency for the federal government, the court held that they did not raise the public disclosure bar. *Id.* at 746. Since there was

no public disclosure, the court determined that a *qui tam* action was not barred. *Id.* Plaintiffs herein contend that, under *Dunleavy,* a public investigation resulting from a suit does not raise the public disclosure bar to that suit. Plaintiffs also assert that they *are* original sources with respect to the proof that certain of defendants' claims were false—for example, that classes did not last as long as the school claimed. Furthermore, plaintiffs contend that by attempting to limit the scope of the Complaint to the time period and programs in which they were enrolled, defendants are attempting to smuggle "standing requirements" into the FCA that are not there.

With regard to plaintiffs' first counterargument, even if their claim concerning causation of the administrative investigation is true, it does not mean that they are the original sources of the information in the Complaint. First, the evidence at bar tends to show that plaintiffs based their Complaint substantially on publicly available information. *Dunleavy* is distinguishable from the instant case because plaintiffs did not know—indeed, could not have known—essential elements of their FCA claim absent administrative reports from both before and after the institution of the instant litigation. Therefore, *Dunleavy* does not counter defendants' arguments in the instant case because the reports relied on and obtained by plaintiffs were indisputably public disclosures, and they had to rely on publicly disclosed information in order to file their initial Complaint—even if that pleading yielded *more* publicly disclosed information.[10]

Second, plaintiffs claim that they are "original sources" as to the facts concerning hours shortages. While this is true, it is also the case that plaintiffs cannot be "original sources" *for such information regarding class hours while they were not in attendance at Omega.*

Finally, with regard to plaintiffs' "standing" objection, defendants are simply reit-

erating that a plaintiff must be an original source of the information and hence must have some "independent" or "direct" knowledge of the alleged acts. As a result, such a plaintiff must have been capable of being an observer at the time of the alleged acts. While indeed there is no requirement that plaintiffs be physically present during the alleged acts (as plaintiffs can amass evidence through an independent investigation, whether physically present at the school or not), the evidence of record shows plaintiffs have amassed no such direct evidence. Therefore, plaintiffs' counterarguments with respect to defendants' motion to limit the scope of the *qui tam* Complaint are not persuasive.

Consequently, because the relators in this action are not the "original sources" of the information on which this suit is based outside of the dates of their attendance at Omega, the public disclosure bar is raised as to plaintiffs' lawsuit with respect to those times during which plaintiffs were not in attendance at Omega. Therefore, the Court grants defendants' motion and will limit the scope for trial of plaintiffs' Complaint to those dates during which plaintiffs actually attended Omega.

### B. Defendants' Motion to Dismiss Plaintiff Beverlee Ralph

Defendants additionally move to dismiss plaintiff Beverlee Ralph from this lawsuit because she admittedly has no direct knowledge of any submission of any claims at all by Omega. In Ralph's affidavit, she does not claim to have any direct knowledge of any submissions by Omega. Further, in her deposition, she admits to having no knowledge of any submissions to the government by Omega.

However, her knowledge, or lack thereof, is not distinguishable from that of the other plaintiffs in this case. She, along with the other plaintiffs, knows at least of certain acts by Omega (hours shortages) that form the basis of the FCA claim. Other plaintiffs

**10.** In the briefing and correspondence relating to this motion, the parties at various points accuse each other of misrepresentation of facts and level attacks on each other's credibility. The Court declines to involve itself in this dispute and in-

stead urges the parties, in the words of a former judge of the New Jersey Superior Court, Cumberland County, "to be sweet and kind to each other."

seem to know just as much as Ralph. This would seem to imply that if the other plaintiffs' claims are allowed to stand—albeit, as limited to the times when plaintiffs were enrolled at Omega—Ralph's claims should remain viable as well. Since factual claims such as hours shortages provide part of the basis of plaintiffs' claim, knowledge of such shortages may qualify plaintiff Ralph as an "original source" of this information. Therefore, she should not be dismissed as a plaintiff, but the scope of her complaint should be limited as with the other plaintiffs.

The Court thus grants defendants' motion in part and denies it in part.

## IV. Defendants' December 16, 1997 Summary Judgment Motion

During the pendency of defendants' December 16, 1997 summary judgment motion to dismiss plaintiffs' RICO claims, plaintiffs on May 6, 1998 moved to dismiss Counts III through IX of their Complaint pursuant to "FED. R. CIV. P. 41(a)(1)." As such, the Court need not reach the merits of defendants' arguments on this motion.

## V. The Conditions of Plaintiffs' Voluntary Dismissal

 Plaintiffs' filing of a Notice of Voluntary Dismissal of Counts III through IX does not, however, end the saga of plaintiffs' discarded RICO and New Jersey state law claims.[11] At a June 1, 1998 status conference plaintiffs' counsel confirmed the submission of this document. At that conference and in subsequent correspondence to the Court, counsel for defendants argued that this voluntary dismissal should be with prejudice. *See* June 8, 1998 Letter of Michael J. Perrucci, Esquire. The remainder of counsel's letter states in relevant part as follows:

> Defendants have incurred substantial cost in preparing a defense to [the allegations in Counts III through IX] including significant discovery and motion practice. The

plaintiffs should be accountable for these costs and therefore, the defendants reserve the right to file an appropriate motion ... seeking reimbursement for such costs.

*Id.*

Voluntary dismissal under Rule 41(a)(1) provides that certain criteria be met:

> **(1) By Plaintiff; by Stipulation.** Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.[12]

Plaintiffs clearly fail to qualify under Rule 41(a)(1). First, plaintiffs filed for voluntary dismissal of Counts III through IX on May 6, 1998, while defendants filed their first motion for summary judgment on December 16, 1997. Second, the document submitted by plaintiffs was signed only by an attorney for plaintiffs; it is not a stipulation "signed by all parties who have appeared in the action." [13]

 Voluntary dismissal under the circumstances of this case is instead governed by Fed.R.Civ.P. 41(a)(2) which reads, in relevant part:

> **By Order of Court** .... [A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper ... Unless otherwise speci-

---

11. The Court notes that plaintiffs' recently dismissed causes of action bear some resemblance to those pled in plaintiffs' newly filed action in the New Jersey Superior Court.

12. FED. R. CIV. P. 23(3) and 66 are inapplicable in this case.

13. Absent plaintiffs' ability to meet Rule 41.(a)(1)'s criteria, it is this Court, and not counsel for plaintiffs, that has authority to issue orders.

fied in the order, a dismissal under this paragraph is without prejudice.

Whether a dismissal should be granted on a Rule 41(a)(2) motion lies within the sound discretion of the district court. *In re Tutu Wells Contamination Litig.*, 994 F.Supp. 638, 652 (D.Vi.1998) (citing *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir.1974); *Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304–5 (3d Cir.1951); 9 Wright & Miller, Federal Practice and Procedure, § 2364 at 161.) The purpose of the Rule is primarily to prevent voluntary dismissals which will prejudice the opposing party, and to permit the court to impose curative conditions to ameliorate such prejudice. *Id.* at 165; *Shulley v. Mileur*, 115 F.R.D. 50, 51 (M.D.Pa.1987) (quotation marks omitted) (citing *John Evans Sons, Inc., v. Majik–Ironers, Inc.*, 95 F.R.D. 186, 190 (E.D.Pa.1982)). Generally, courts have followed the principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *See Westinghouse Elec. Corp. v. United Elec. Radio and Mach. Workers of Am.*, 194 F.2d 770, 771 (3d Cir.1952); *Bosteve Ltd. v. Marauszwki*, 110 F.R.D. 257, 259 (E.D.N.Y. 1986); 9 Wright & Miller, § 2365 at 165. In addressing a Rule 41(a)(2) motion, a court must weigh the relevant equities and do justice between the parties in each case. *Pouls v. Mills*, 1993 WL 308645, *2 (E.D.Pa.1993), aff'd, 27 F.3d 558 (3d Cir.1994) (citation and quotation marks omitted).

 Given that plaintiffs have, for whatever reason, decided not to pursue Counts III through IX of their First Amended *qui tam* Complaint in federal court, and given that this dismissal was accomplished so close to the trial of this case after over three years of litigation, the Court in its discretion will accept plaintiffs' offer of voluntary dismissal pursuant to Rule 41(a)(2). Requiring plaintiffs to prove at trial causes of action they thought they had dismissed would burden the plaintiffs. The language of defendants' counsel's letter, however, does point to the possibility of prejudice from having to engage in discovery and motion practice prior to the dismissal of Counts III through IX. Whether there has been "prejudice" in the sense of litigation harm, however, is distinct from the inquiry as to whether claims ought to be voluntarily dismissed with or without prejudice. Defendants' argument that they may have had to unnecessarily litigate federal RICO counts is arguably viable. Yet with respect to plaintiffs' state law causes of action, which have now resurfaced in state court, defendants have provided the Court with no previous briefing on the merits of dismissing these counts. On this as yet undeveloped record as to the extent of defendants' prejudice—indeed, defendants' "motion" is a mere two-paragraph letter—the Court will, in an abundance of caution, dismiss Counts III through IX without prejudice. Since no such motion for costs and attorneys' fees has yet been made, the Court expresses no opinion on the subject. Because defendants have reserved their rights to later file for an award of attorneys' fees and costs of what they deem to be unnecessary litigation, they are free to demonstrate their actual harm with a motion for such expenses. The Court is satisfied that the assumption of this middle course is an appropriate balancing of the equities between the parties.

### C. Conclusion

For all of the foregoing reasons, defendants' motion for summary judgment as to plaintiffs' federal RICO claims is dismissed. The Court will accept plaintiffs' voluntary dismissal of Counts III through IX of their First Amended *qui tam* Complaint and dismiss these causes of action without prejudice. There being no motion by defendants for costs and attorneys fees, the Court reserves on the merits of this issue pending receipt of such motion.

The motions by individual defendants Cobleigh and Burke for summary judgment are denied. Defendants Gremmels's and Kelly's motions for summary judgment are also denied. The Court, however, grants defendant Marra's motion for summary judgment on Count II, but denies his motion with respect to Count I. The Court also denies the summary judgment motions of defendants Winter and Papin.

Defendants' motion to dismiss or alternatively for a stay pending an administrative determination by the Department of Education is denied. Defendants' motion to limit the scope of plaintiffs' Complaint—and subsequent case at trial—to time periods in which plaintiffs actually attended Omega Institute will be granted. Defendants' motion to dismiss plaintiff Beverlee Ralph's Complaint, however, is denied.

The Court will enter an appropriate order

## ORDER

**THIS MATTER,** having come before the Court on: (1) a motion for summary judgment pursuant to FED. R. CIV. P. 56 by defendants Omega Institute, Lee E. Cobleigh, Franklin Burke, Clarita Eusebio–Kelly, Raymond Papin, Adele Winter, Joseph Marra, and Sharon E. Gremmels filed December 16, 1997 as to plaintiffs' federal RICO claims; (2) a motion to dismiss, or in the alternative for a stay pending an administration proceeding currently underway by the United States Department of Education ("DOE"), also filed December 16, 1997; (3) a motion by the above-named individual defendants for summary judgment pursuant to FED. R. CIV. P. 56, filed June 10, 1998; and (4) a motion by all defendants "for Summary Judgment to Limit the Scope of Plaintiffs' First Amended *Qui Tam* Complaint and to dismiss Plaintiff Beverlee Ralph's Complaint," filed June 10, 1998;

The Court, having reviewed the submissions of the parties; and

For the reasons set forth in the Court's opinion of this date;

**IT IS,** on this 2nd day of July, 1998 hereby **ORDERED** that plaintiffs' voluntary dismissal of Counts III, IV, V, VI, VII, VIII, and IX of their First Amended *qui tam* Complaint filed May 6, 1998 pursuant to FED. R. CIV. P. 41(a)(1) is **DENIED;** and

The Court, having considered said motion for voluntary dismissal of Counts III, IV, V, VI, VII, VIII, and IX of plaintiffs' First Amended *qui tam* Complaint filed May 6, 1998 as made under FED. R. CIV. P. 41(a)(2), said motion is **GRANTED** and Counts III, IV, V, VI, VII, VIII, and IX are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment as to plaintiffs' federal RICO claims filed December 16, 1997 is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' December 16, 1997 motion to dismiss or alternatively for a stay pending an administrative proceeding by the United States Department of Education is **DENIED.**

**IT IS FURTHER ORDERED** with respect to the summary judgment motions filed June 10, 1998 by the following individual defendants:

(1) Motions by defendants Cobleigh and Burke are **DENIED.**

(2) Motions by defendants Gremmels and Kelly are **DENIED.**

(3) Motion by defendant Marra as to Count I of Plaintiffs' Complaint is **DENIED,** but **GRANTED** as to Count II.

(4) Motions by defendant Winter are **DENIED.**

(5) Motions by defendant Papin are **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motion filed June 10, 1998 to limit the scope of plaintiffs' First Amended *qui tam* Complaint to time periods during which plaintiffs' attended the defendant Omega Institute is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants' motion filed June 10, 1998 to dismiss plaintiff Beverlee Ralph's First Amended *qui tam* Complaint is **DENIED.**