**MERCER TOOL CORP., Plaintiff,**

v.

**FRIEDR. DICK GmbH, Defendant.**

**No. CV 96–2152(ADS).**

United States District Court,
E.D. New York.

June 29, 1998.

Mark R. Crosby, New York City, for Plaintiff.

Fulbright & Jaworski, LLP, New York City (K. Jane Fankhanel, of counsel), for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This diversity-breach of contract action arises from the claims of the plaintiff, Mercer Tool Corporation ("Mercer" or the "plaintiff"), against the defendant, Friedr. Dick GmbH ("Friedr. Dick" or the "defendant"), for the alleged failure to pay commissions and damages suffered in reliance on the defendant's representations, and as a result of violations of the New York Labor Law. In a

Decision and Order dated September 16, 1997, the Court granted the plaintiff's motion to voluntarily dismiss the case, without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, for the purpose of adding a non-diverse party defendant and refiling the lawsuit in New York State court. *See Mercer Tool Corp. v. Friedr. Dick GmbH*, 175 F.R.D. 173, 176 (E.D.N.Y.1997). In the same Order, the Court denied the defendant's cross-motion to condition dismissal of this case on an award of costs, including attorneys' fees, without prejudice and with leave to resubmit in a separately-briefed motion. *Mercer Tool Corp. v. Friedr. Dick GmbH*, 175 F.R.D. at 176–77. Presently before the Court is the defendant's renewed motion for costs and attorneys' fees.

### I. BACKGROUND

The pertinent facts of this case are set forth in the Court's earlier decision, *Mercer Tool Corp. v. Friedr. Dick GmbH,* 175 F.R.D. at 174–75, familiarity with which is presumed. Briefly reiterated here, the plaintiff is a New York corporation in the business of selling high quality cutlery and industrial products, with its principal place of business in Deer Park, New York. The defendant is a German corporation which manufactures high quality cutlery with a place of business also in Deer Park.

From June 1983 through 1995, the parties maintained a business relationship pursuant to a written "Agency Contract and Warehousing Agreement." According to the Complaint, the terms of this agreement entitled Mercer to certain commissions at rates agreed upon by the parties for services rendered, namely warehousing and sales. These rates were modified periodically by the parties. Mercer alleges that during negotiations in 1994 relating to the commission rates, the defendant's president, William Leuze and its Director of Marketing and Sales, Ronald Muller, represented to the plaintiff that Friedr. Dick intended to sign an agreement continuing the parties' relationship for another five years.

According to the plaintiff, in reliance on this representation, Mercer spent more than $50,000 installing a new computer system to handle Friedr. Dick's business. In addition,

the plaintiff encouraged the defendant to hire one of Mercer's key employees, William E. Colwin. Finally, in reliance on the expectation of a continuing business relationship between the parties, the plaintiff secured sales contracts with the Culinary Institute of American ("CIA") and Johnson & Wales University ("Johnson & Wales"). The Complaint alleges that Friedr. Dick agreed in writing that Mercer would receive a ten percent commission on all sales made to CIA and a four percent commission on all sales to Johnson & Wales.

On June 30, 1995, the defendant sent written notice to the plaintiff of its intention to terminate the parties' contracts. Since August 1995, the parties have not conducted any business together and the defendant repeatedly has refused to pay the plaintiff the money it allegedly is owed.

Based on these allegations, on May 14, 1996, Mercer filed its Complaint alleging four causes of action for: (1) breach of contract; (2) promissory estoppel; (3) declaratory judgment; and (4) violation of New York Labor Law § 191. On or about October 31, 1996, less than six months after commencing this action, the plaintiff notified the defendant that it intended to move for voluntary dismissal under Rule 41(a)(2). That same day, the defendant requested an adjournment of the initial case management conference while it considered whether it would oppose Mercer's proposed Rule 41(a)(2) motion. At that time, neither party had filed any motions, and discovery had not commenced. Although the defendant served written interrogatories and document requests on its adversary, the defendant withdrew these requests, apparently after the plaintiff advised that Rule 26 restricts discovery pending the initial case management conference.

Thereafter, the plaintiff filed a motion for voluntary dismissal, without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2), for the purpose of adding a non-diverse party defendant. The defendant filed with its reply papers a cross motion to condition voluntary dismissal upon the plaintiff's payment of attorneys' fees and costs.

In a Memorandum of Decision and Order dated September 16, 1997, the Court granted the plaintiff's motion, emphasizing that "the plaintiff has been diligent in bringing this motion [and] fil[ed] it at the early stages of this litigation. Further, there appears to be no 'undue vexatiousness' on the plaintiff's part. Mercer brings this motion in order to add a non-diverse party defendant, a permissible objective . . . . In addition, . . . this lawsuit is in its initial stages, and involves state law claims which [ ] no doubt will be the basis of any state court litigation." *Mercer Tool Corp.*, 175 F.R.D. at 176 (citing *Der v. E.I. DuPont de Nemours & Co.*, 142 F.R.D. 344, 345–46 [M.D.Fla.1992]; *O'Reilly v. R.W. Harmon & Sons, Inc.*, 124 F.R.D. 639, 641 [W.D. Mo.1989]).

In this decision, the Court also denied the defendant's cross-motion for fees and costs, without prejudice and with leave to renew. While the opinion noted that "the possibility of awarding attorneys' fees has been recognized by a number of circuit courts including the Second Circuit," the Court also emphasized that "the award of such fees is within the discretion of the court." *Mercer Tool Corp.*, 175 F.R.D. at 176 (citing *Colombrito v. Kelly*, 764 F.2d 122, 133 [2d Cir.1985]); *Belle–Midwest, Inc. v. Missouri Property & Casualty Ins. Guarantee Ass'n*, 56 F.3d 977, 978 [8th Cir.1995]; *Marlow v. Winston & Strawn*, 19 F.3d 300, 306 [7th Cir.1994]. The Court indicated that it "may be inclined to award to Friedr. Dick its costs, incurred in this litigation, including attorney's fees with certain limitations" but that various factors prohibited an award at that juncture. First, the Court found that Friedr. Dick's inclusion of the relevant information in support of such an award, including billing time sheets and an accompanying affidavit, with its reply papers precluded the plaintiff from submitting substantial responsive papers, thereby depriving the plaintiff an opportunity to be heard on this subject. Second, the Court advised that the hourly rate sought by the defendant, namely $300 per hour for partners and almost $200 per hour for associates, was inconsistent with similar fee awards rendered by this Court, which generally allowed $200 per hour for partners, $135 per hour for associates, and $50 per hour for paralegals. Finally, the Court stated that "both parties should be given an opportunity to present their views as to which costs incurred by the

defendant are compensable because the tasks involved will not be used in the future state court action." *Mercer Tool Corp.*, 175 F.R.D. at 176–77.

## II. DISCUSSION

### A. The Defendant's Motion for Fees and Costs

In support of the renewed motion for fees and costs, the defendant has filed the affida-vit of K. Jane Fankhanal, a member of the law firm representing the defendant, setting forth the legal fees incurred in connection with defending this lawsuit. Fankhanal's affidavit and the accompanying memoranda indicate that the defendant incurred legal fees and costs in the following categories:

### FEES ALLEGEDLY INCURRED BY THE DEFENDANT

| # | Type of Work Performed | Fees Incurred |
|---|---|---|
| 1 | *Research* pertaining to Fed.R.Civ.P. 4, "the relationship between Rule 4 and certain defenses to this action, ... the Hague Convention and the interplay between Rule 4 and the Hague Convention, and ... state law contract defenses" | $ 7,435.00 |
| 2 | *Preparation of an Answer* | $ 4,001.50 |
| 3 | *Research* regarding the Court's automatic disclosure rules, preparation of a First Request for Production of Documents and a Notice of Deposition | $ 935.50 |
| 4 | *Conference and communications* with United States Magistrate Judge E. Thomas Boyle | $ 806.00 |
| 5 | *Research* concerning the Federal Rules of Civil Procedure and deposition location and expense | $ 614.50 |
| 6 | *Preparation of the cross-motion* and supporting papers, and the instant motion and supporting papers | $15,452.50 |
| 7 | *Settlement discussions* with the plaintiff's attorneys | $ 310.00 |
| 8 | *Attorneys' costs and disbursements* | $ 1,142.29 |
| | **TOTAL AMOUNT OF ATTORNEYS' FEES AND COSTS INCURRED** | $30,701.29 |

Starting, therefore, with the figure of $ 30,701.29, the defendant voluntarily agrees to reduce the amount by eliminating fees attributable to work which may be useful in the threatened state lawsuit, and by recalcu-lating the fees at the lodestar rates the Court suggested in its prior decision. After applying these discounts, the defendant arrived at the following fee requests:

### THE DEFENDANT'S RECALCULATED FEE APPLICATION BASED ON VOLUNTARY REDUCTIONS

| Category | Fees Calculated at Defendant's Usual Hourly Rates | Extent of Reduction For Work That May Be Useful in Future Litigation | Requested Fees at Reduced Lodestar Rates |
|---|---|---|---|
| 1. *Research* on Rule 4, Hague Convention, and state law contract defenses | $ 4,919.00 | 2/3 | $ 3,392.40 |

| Category | Fees Calculated at Defendant's Usual Hourly Rates | Extent of Reduction For Work That May Be Useful in Future Litigation | Requested Fees at Reduced Lodestar Rates |
|---|---|---|---|
| 2. *Preparation of Answer* | $ 2,000.75 | 1/2 | $ 1,357.00 |
| 3. *Research* regarding automatic disclosure, preparation of First Request for Document Production and Notice of Deposition | $ 450.75 | 1/2 | $ 379.75 |
| 4. *Conference and communications* with Magistrate Judge | $ 806.00 | No reduction | $ 380 |
| 5. *Research* regarding Civil Procedure, deposition location and expense | $ 614.50 | No reduction | $ 483.40 |
| 6. *Preparation of the cross-motion and the instant motion* | $15,452.50 | No reduction | $10,379.50 |
| 7. *Settlement discussions* | $ 00.00 | Full Reduction | $ 00.00 |
| 8. *Attorneys' costs and disbursements* | $ 1,142.29 | No reduction | $ 1,142.29 |
| **TOTAL FEES REQUESTED:** | -------------- | -------------- | $17,514.44 |

The plaintiff counters that the defendant is not entitled to any legal fees because "Friedr. Dick's efforts will be put to good use in the re-filed case. Friedr. Dick should not be entitled to have Mercer fund its attorneys' preparation of its defense in the re-filed case." (Plaintiff's Memorandum of Law in Opposition, at 3). The plaintiff fails to address the fact that the fee request reflects a reduction by removing work that will be applicable in the potential state court litigation. Moreover, the plaintiff does not specifically challenge the amount by which the defendant has reduced its fees, or offer an alternative amount.

**B. Award of Attorneys' Fees and Costs Under Rule 41(a)(2): The Standard**

 The Court begins with the proposition that "[c]ourts often grant fee awards when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)." *Jewelers Vigilance Committee, Inc. v. Vitale, Inc.*, No. 90 Civ. 1476, 1997 WL 582823, *4 (S.D.N.Y. Sept. 19, 1997)(citing *Colombrito v. Kelly*, 764 F.2d 122, 133 [2d Cir.1985]; 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil 2d S 2366, at 305–06 [1995]). "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito*, 764 F.2d at 133 (citations omitted).

By contrast, courts rarely grant attorneys' fees when an action is dismissed voluntarily with prejudice. *Id.* at 133–34; *see also Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 15 (E.D.N.Y.1996)("if the dismissal is with prejudice, a district court generally lacks the power to require payment of attorney's fees"). In those circumstances, attorney's fees are considered inappropriate because the defendant "has been freed of the risk of relitigation of the issues just as if the case had been adjudicated in his favor after a trial, in which event (absent statutory autho-

rization) the American Rule would preclude such an award." *Colombrito,* 764 F.2d at 134. Consistent with that purpose, "payment of fees [upon dismissal without prejudice] must be limited to compensation for work that cannot be used in a second contemplated action, and the amount of fees awarded must be supported by evidence in the record." *Ames v. Clifford,* No. 94 Civ. 6712, 1996 WL 563098, *1 (S.D.N.Y. Oct. 2, 1996)(citing *Taragan v. Eli Lilly,* 838 F.2d 1337, 1340 [D.C.Cir.1988] ). *See also Horton v. Trans World Airlines Corp.,* 169 F.R.D. at 18 (noting that courts generally will not reimburse defendants for the costs and expenses incurred for work that will be relevant in other pending litigation between the parties, or that were incurred unnecessarily).

Applying these standards, the Court grants the fee application, subject to certain limitations, in the seven categories of work performed.

### 1. Research Regarding Fed.R.Civ.P. 4, the Hague Convention, and State Law Contract Defenses: $3,392.40

■ With respect to Category 1, the plaintiff baldly asserts that this "research will certainly be useful in the contemplated litigation" and, therefore, that the defendant's fee request in this category should be denied in its entirety. Completely overlooked is the fact that the defendant reduced its fees in this category by two-thirds, and seeks no recovery for attorneys' time spent researching the Hague Convention or state law defenses to the contract—work which may be useful in any future litigation (Fankhanel Aff., ¶ 35). Thus, the amount requested only reflects research related to Fed.R.Civ.P. 4, which clearly will be irrelevant to the state court action. In the Court's view, the defendant's requested fee in this category appropriately reflects work performed that is unique to the aborted federal litigation. Accordingly, the defendant's fee request for $3,392.40 is granted in its entirety.

### 2. Preparation of Answer: $1,357.00

■ The plaintiff attacks the request for $1,357.00 in attorneys' fees associated with preparing an answer, on the ground that

since the defendant will "likely rely upon the same defenses to Mercer's breach of contract claim in the re-filed case," these fees should be denied in their entirety. The defendant counters that the requested fees already have been cut in half, from $2,714.00, to account for the fact that there may be some overlap in counsel's efforts in the possible state court litigation. In the Court's opinion, the attorneys' efforts devoted to preparation of an answer in the federal case will be duplicated, to a great extent, in the event a state court suit is filed, especially since the federal complaint raises only state law claims. Given the likely usefulness of the answer in future litigation, the Court concludes that one-third of the defendant's fee request, or $904.00, is appropriate.

### 3. Research Regarding Automatic Disclosure, Preparation of First Request for Document Production and Notice of Deposition: $379.75

■ Without specifically addressing this fee request, the plaintiff contends, in a generalized fashion, that fees incurred in contemplation of discovery should be denied because "they were premature and contrary to the local rule" and because the defendant "will need to seek the same information in the re-filed cases." (Plaintiff's Memorandum of Law in Opposition, at 5). The plaintiff simply ignores the fact that the defendant discounted its fee in this category by 1/2 in contemplation of these contentions. In the Court's opinion, pre-discovery research and preparation was appropriate, and will not be useful during the theoretical state court case. For these reasons, the defendant's request for $379.75 is granted.

### 4. Conference And Communications With Magistrate Judge: $380

■ While the plaintiff asserts that the defendant's fee request should be denied in its entirety, it does not specifically address this category of work. The Court can only assume that the reasons for this is that there exists no valid counter-argument. By its very nature, with reasonable certainty, the time and effort spent on a conference and communications with a United States Magis-

trate Judge will not be helpful in state court proceedings. Therefore, the defendant's fee request for $380.00 is granted.

### 5. Research Regarding Civil Procedure, Deposition Location and Expense: $483.40

■ This category of expenses reflects the time defense counsel invested in researching issues under the Federal Rules of Civil Procedure, including provisions relating to the plaintiff's ability to compel the defendant's employees and officers to travel from Germany to the United States for depositions. While the plaintiff theorizes that such research was premature and unnecessary since discovery had not yet commenced, given that the case was already six months underway, the Court finds that it was entirely appropriate for the defendant to perform such work in anticipation of seemingly inevitable discovery issues. As this research regarding the plaintiff's rights to depose German witnesses under the Federal Rules may not be applicable in state court, the Court grants the defendant's application for fees amounting to $483.40.

### 6. Preparation of the Cross–Motion and the Instant Motion: $10,379.50

■ The defendant asks this Court to award $10,379.50, the lion's share of its fees, for work performed in connection with preparing the prior cross-motion and this motion for fees. This figure represents a total of approximately 42 attorney hours expended litigating the fee claim. The plaintiff predictably contends, without much elaboration, that the fee should be denied, and the defendant counters that these fees should be awarded because they were occasioned by the plaintiff's voluntary dismissal and will not be applicable to the defense of any future action.

The Court notes that this category of fees represents more than half the total amount requested. Correspondingly, the Court observes that of 96.80 hours of total attorney time spent on this case, nearly half were devoted to the fee applications. In the Court's opinion, this is an excessive amount of time, especially in view of the early stage of the litigation. This was a relatively straightforward fee request, as evidenced by the brevity of the defendant's memoranda in support of the applications: the initial Memorandum of Law and Reply Memorandum in support of the cross-motion for fees totaled just 4½ and 9½ pages, respectively; and the Memorandum of Law and Reply Memorandum prepared in connection with the renewed motion totals just over 10 and 6 pages, respectively. In addition, much of the work performed in connection with the renewed motion is duplicative of work performed on the initial cross-motion for fees. For these reasons, the Court is reducing the request by one-third, from $10,379.50 to $3,459.83.

### 7. Settlement discussions: No Amount Requested

The defendant commendably declines to request a fee for this category of work, recognizing that such discussions have potential future value. Accordingly, no fees will be awarded in this category.

### 8. Costs and Disbursements: $1,142.29

■ The plaintiff glosses over the defendant's request for $1,142.29 in attorneys' disbursements and expenses, including telephone and fax communication expenditures, courier service charges, and photocopying costs not related to document production. Irrespective of the plaintiff's position, or lack thereof, the Court agrees with the defendant's argument that "[r]egardless of the complexion of the impending state court litigation, these are sunk costs that are wasted or will need to be duplicated by [the defendant] in the future." (Defendant's Memorandum of Law, at 10). The defendant's fee request in the amount of $1,142.29, therefore, is granted.

In view of the foregoing, the defendant's request for costs and fees is granted, to the extent set forth above, in the total amount of $10,141.67.

### C. The Defendant's Request for an Order Directing that the Plaintiff's Payment of the Amount Awarded be a Condition Precedent to the Filing of the Proposed State Court Action

■ Finally, the defendant tacks on to the conclusion of his reply papers a request

that "payment of the amount awarded be made a condition precedent to Plaintiff's filing or serving a future state court action." (Defendant's Reply Memorandum of Law, at 6). The defendant supplies no authority for the proposition that Rule 41(a)(2) authorizes the Court to grant such relief. Regardless, in the Court's opinion, it is procedurally improper to raise the issue for the first time in reply papers, thereby precluding the plaintiff from offering a meaningful response. For this reason, that aspect of the requested relief is denied.

Having reviewed the parties' submissions, and for the reasons set forth above, it is hereby

**ORDERED**, that the defendant's renewed motion to require the plaintiff to pay the defendant's attorneys' fees and costs is granted, to the extent set forth above, in the amount of $10,141.67, which is comprised of the following categories: (1) *Research Regarding Fed.R.Civ.P. 4:* $3,392.40; (2) *Preparation of Answer:* $904.00; (3) *Research Regarding Automatic Disclosure, Preparation of First Request for Document Production and Notice of Deposition:* $379.75; (4) *Conference And Communications With Magistrate Judge:* $380; (5) *Research Regarding Civil Procedure, Deposition Location and Expense:* $483.40; (6) *Preparation of the Cross–Motion and the Instant Motion:* $3,459.83; and (7) *Attorneys' Costs, Including Photocopying and Communication Costs:* $1,142.29; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**