UNITED STATES of America, ex rel. Diane HASKINS, and Beverlee Ralph, and Diane Haskins and Beverlee Ralph, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

OMEGA INSTITUTE, INC.; Lee E. Cobleigh; Franklin Burke; Dr. Clarita Eusebio-Kelly; Raymond Papin; Adele Winter; Joseph Marra; and Sharon E. Gremmels, Defendants.

Civil Action No. 95–265(SSB).

United States District Court,
D. New Jersey.

Nov. 19, 1998.

Philip Stephen Fuoco, The Law Firm Of Philip Steven Fuoco, Haddonfield, NJ for Plaintiffs.

Eltia I. Montano, Michael J. Perrucci, Florio & Perrucci, P.C., Piscataway, NJ, for Defendants.

BROTMAN, District Judge.

This matter comes before the Court on plaintiffs' motions for reconsideration and clarification of this Court's July 7, 1998 opinion and order limiting the scope of the alleged fraud plaintiffs may prosecute under the False Claims Act.

**1.** The plaintiffs in a qui tam action are known as relators.

## I. STATEMENT OF FACTS

Omega Institute, Inc. ("Omega") is a private, post-secondary school providing a variety of programs, including a paralegal/legal support training program. As prior students at Omega, plaintiffs Diane Haskins ("Haskins") and Beverlee Ralph ("Ralph") (collectively "plaintiffs" or "relators")[1] have brought a qui tam action on behalf of themselves and other former and current Omega paralegal students against Omega, Franklin Burke, Lee E. Cobleigh, Raymond Papin, Dr. Clarita Eusebio–Kelly, Sharon E. Gremmels, Adele Winter, and Joseph Marra (collectively "defendants") alleging violations of the False Claims Act ("FCA"), 31 U.S.C.A. § 3729 et seq.

Plaintiffs filed a two-count qui tam action against the defendants on January 5, 1995, which they amended approximately two years later on January 14, 1997. In their amended complaint, plaintiffs made various claims against defendants including violations of the FCA, federal RICO, New Jersey RICO, and the New Jersey Consumer Fraud Act, as well as several state law violations. On December 16, 1997, defendants filed a number of motions. In its July 7, 1998 opinion and order regarding these motions, this Court accepted pursuant to Fed.R.Civ.P. 42(a)(2) plaintiffs' voluntary dismissal without prejudice of all claims except the FCA claims against defendants. *See United States ex rel. Haskins v. Omega Institute, Inc.*, 11 F.Supp.2d 555, 570 (D.N.J.1998). In its opinion, the Court acknowledged defendants' right to later file a motion for attorneys' fees and costs incurred in defending against the dismissed counts. *See id.* On July 31, 1998, defendants filed such a motion, requesting that the court order plaintiffs to pay defendants $20,057.75 for attorneys' fees incurred in defending against plaintiffs' federal RICO claims, Counts III and IV of plaintiff' amended complaint. Also in its July 7, 1998 opinion and order, the Court limited the scope of plaintiffs' amended complaint to those dates during which plaintiffs actually attended Omega.[2] *See id.* at 568. On July 17, 1998,

**2.** Under the FCA, a court "shall not have jurisdiction over an action ... based on the public

plaintiffs filed a motion for reconsideration and a motion for clarification of the Court's opinion and order limiting the scope of plaintiffs' amended complaint.

## II. DISCUSSION

### A. MOTIONS FOR RECONSIDERATION AND CLARIFICATION

#### 1. Standard for Reconsideration

 Loc. Civ. R. 7.1(g) governs motions for reconsideration.[3] A court will grant a motion for reconsideration where "dispositive factual matters or controlling decisions of law" were presented to the court but not considered. *Pelham v. United States,* 661 F.Supp. 1063, 1065 (D.N.J.1987). A court will deny a motion for reconsideration where a party simply asks the court to analyze the same facts and cases it has already considered in reaching its original decision. *See Carteret Savings Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989). A court's approach is less predictable where a party files a motion for reconsideration to request that the court look to evidence and cases which were readily available at the time the original matter was decided but which were not presented to the court. *See Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 162 (D.N.J.1988). The decision whether to grant or deny a motion for reconsideration in such a situation is within the court's discretion. *See id.* On the one hand, motions for reconsideration are thought to be "an inappropriate avenue for relitigating matters which could have been adequately presented the first time." *NL Indus., Inc. v. Commercial Union Ins. Co.,*

935 F.Supp. 513, 516 (D.N.J.1996). On the other hand, if a court "finds that its consideration of evidence offered for the first time on a motion for reargument may lead to a different result than was reached originally, the [c]ourt has discretion to consider it." *Tyree Org., Ltd. v. Natirar Realty Corp.,* Civil No. 94–20, 1994 WL 405506, at * 2 (D.N.J. Aug.1, 1994).

#### 2. Reconsideration of the Court's July 7, 1998 Decision

The relators argue that the Court should reconsider its decision to limit the scope of the fraud the relators may prosecute under the FCA because the relators failed to provide the Court with important precedent and facts which would have affected the Court's decision.

##### a. New Caselaw

The relators refer to only one case which they did not cite in their original opposition memorandum: *U.S. ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339 (4th Cir.1994). Not only does this case fail to control this Court's actions but it is truly an outlier with regard to the proposition for which the relators cite it. The *Siller* court found that the public disclosure bar to qui tam actions only arises where "the relator has actually derived from [a public] disclosure the allegations upon which his qui tam action is based." *Id.* at 1348. Until *Siller,* however, the following was true:

> [A]ll courts of appeals speaking to the question had implicitly agreed ... that the ... bar is triggered whenever the relator

---

disclosure of allegations or transactions ... unless ... the person bringing the action is an original source of the information." 31 U.S.C.A. § 3730(e)(4)(A) (West Supp.1998). This is known as the FCA's public disclosure bar to qui tam actions. In its July 7, 1998 opinion, this Court limited the scope of plaintiffs' amended complaint because it found that "plaintiffs based their Complaint substantially on publicly available information" and because it found that plaintiffs were "not the 'original sources' of the information on which this suit is based outside of the dates of their attendance at Omega." *Haskins,* 11 F.Supp.2d at 568.

**3.** Loc. Civ. R. 7.1(g) is entitled "Motions for Reargument." Because New Jersey district

courts have used the terms "reargument" and "reconsideration" interchangeably, Loc. Civ. R. 7.1(g) has been found to govern both motions for reargument and motions for reconsideration. This rule states as follows:

> A motion for reargument shall be served and filed within 10 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. There shall be served with the notice a brief setting forth concisely the matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked. No oral argument shall be heard unless the Judge or Magistrate Judge grants the motion and specifically directs that the matter shall be reargued orally.

files a complaint describing allegations or transactions substantially similar to those in the public domain, regardless of the actual source for the information in the particular complaint.

*United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675, 682 (D.C.Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997). As a Fourth Circuit case which departs from the generally accepted approach to the qui tam public disclosure bar, *Siller* is both non-controlling and unpersuasive. *Siller*, therefore, does not give the Court cause to reconsider its opinion.

### b. New Evidence

■ The relators also argue that the Court should reconsider its July 7, 1998 decision in light of Haskins' July 16, 1998 certification. *See* Reconsideration Memorandum, Exh. C. This certification contains statements indicating that plaintiff Haskins' allegations about defendants' practices were the result of her own experiences and her own investigations. *See id.*, ¶ 4. She states that she personally observed some of these practices while a student at Omega and that she learned of other practices through interviews with Omega students who attended the institute both before and after her. *See id.*, ¶¶ 5,6.

■ Pursuant to 31 U.S.C.A. § 3730(e)(4)(A) (West Supp.1998), where a relator is an "original source" of information, the public disclosure bar cannot preclude suit by that relator. Relators are "original sources" where they have "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C.A. § 3730(e)(4)(B) (West Supp.1998). While the paradigmatic "original source" is a whistleblowing insider, relators who obtain their information by conducting their own investigations also qualify as "original sources." *See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1161 (3rd Cir.1991). This Court acknowledged as much in its original opinion. *See Haskins*, 11 F.Supp.2d at 568 ("[I]ndeed there is no requirement that plaintiffs be physically pres-

ent during the alleged acts (as plaintiffs can amass evidence through an independent investigation, whether physically present at the school or not).") In considering the evidence originally presented to it, this Court found that the plaintiffs had failed to provide any proof that they had independently investigated Omega's practices. *See id.* Haskins' July 16, 1998 certification suggests otherwise.

Because this evidence could affect the Court's decision to limit the scope for trial of the plaintiffs' complaint to those dates during which the plaintiffs actually attended Omega, it is within the Court's discretion to reconsider its decision in light of this new evidence. This discretion places the Court in an uncomfortable position. The Court recognizes that the certification could have been prepared and submitted for consideration prior to the Court's original opinion on this matter. The Court therefore hesitates to render a decision on the reconsideration motion which would in any way condone plaintiffs' delay in presenting the certification to the Court. At the same time, the Court recognizes that the 1986 amendments to the False Claims Act, including 31 U.S.C.A. § 3730(e)(4), were designed to encourage individual citizens to investigate and report fraud. *See Stinson*, 944 F.2d at 1154. The Court's failure to reward citizens for their efforts would create a disincentive for citizens to take the time to investigate and report fraud in the future.

The Court's decision is made easier by the fact that the order it issued limiting the scope of plaintiffs' amended complaint was not a final, appealable order. It was an interlocutory order, governed by Fed. R.Civ.P. 54(b). Pursuant to this rule, courts retain jurisdiction over their interlocutory orders which are not certified for immediate appeal and may modify them at any time before trial. *See* Fed.R.Civ.P. 54(b) ("[A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties.");

*Garrett v. Firestone Tire & Rubber Co.*, Civ. No. 88–0708, 1989 WL 21778, at *2 (D.N.J. March 7, 1989) (reconsidering under Fed. R.Civ.P. 54(b) its decision to grant partial summary judgment). When presented with supplemental evidence or new legal theories, courts routinely entertain motions to reconsider interlocutory orders. *See Garrett*, 1989 WL 21778, at *2. The *Garrett* court, for example, granted a motion to reconsider its partial summary judgment order based on evidence that was available to the plaintiff before the court's original decision but was not presented to it:

> The court does not favor the use of motions to reconsider as a means to 'patch up' defective pleadings or arguments which cause the adjudication of substantive issues without the benefit of crucial evidence. But a party's claim for relief should not be foreclosed merely because of an omission in moving papers dealing with a non-final order.

*Id.*

With due respect for the opposing interests vying for the Court's attention, the Court finds itself propelled by the words of the *Garrett* court to expand the scope of the fraud about which Haskins may present evidence at trial. The Court will permit Haskins to present evidence of defendants' practices about which she had "direct and independent knowledge." This means that she may present evidence regarding those practices she observed while attending Omega. In addition, she may present evidence of defendants' practices which she learned of through her own investigations while at

Omega or thereafter. The burden will be on Haskins to prove the source of her information. Because plaintiff Ralph has not provided the Court with any evidence that her information regarding defendants' practices was the result of independent investigations, at trial she may only present evidence of those practices about which she had "direct and independent knowledge" while a student at Omega.[4]

### C. MOTION FOR ATTORNEYS' FEES

#### 1. Awarding Attorneys' Fees After Voluntary Dismissal under Fed.R.Civ.P. 41(a)(2)

Courts often grant attorneys' fees when a plaintiff voluntarily dismisses a suit without prejudice under Fed.R.Civ.P. 41(a)(2).[5] *See Mercer Tool Corp. v. Friedr. Dick*, 179 F.R.D. 391, 395 (E.D.N.Y.1998); *Nazzaro v. Weiner*, 38 F.R.D. 430, 433 (D.N.J.), *aff'd* 353 F.2d 537 (3rd Cir.1965); 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil.2d § 2366, at 305–306 (1995). Courts make these awards "to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito v. Kelly*, 764 F.2d 122, 133 (2nd Cir.1985) (citations omitted). To determine whether to award costs and attorneys' fees to defendants after voluntary dismissal without prejudice under Fed.R.Civ.P. 41(a)(2), courts generally consider the following factors:

4. In the process of deciding plaintiffs' motion for reconsideration, the Court believes that it has addressed the concerns plaintiffs raised in their motion for clarification. In that motion, plaintiffs questioned whether the Court intended to limit the scope of plaintiffs' evidence at trial to those time periods during which plaintiffs attended Omega. *See* Memorandum in Support of Plaintiffs' Motion for Clarification at 2. Plaintiffs suggested that "the [C]ourt intended in its ruling on the scope of the relators' trial proofs to limit the proofs to the alleged fraudulent 'transactions' which the relators discovered during their term and which defendants did not cease during the period of the statute of limitations." *Id.* As the text of this opinion makes clear, the Court intends to limit the evidence which plaintiffs may

present at trial to evidence of those practices of defendants about which plaintiffs had "direct and independent knowledge" either through independent investigation, for plaintiff Haskins, or through attendance at Omega, for plaintiffs Haskins and Ralph. To the extent that the text of this opinion clarifies the Court's July 7, 1998 opinion and order, plaintiffs' motion for clarification is granted.

5. Fed.R.Civ.P. 41(a)(2) provides as follows:

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

(1) any excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the pending litigation has progressed; (4) and [sic] the claimant's diligence in moving to dismiss.

*In re Tutu Wells Contamination Litigation*, 994 F.Supp. 638, 653 (D.Vi.1998).

 The Court has considered these factors in light of the situation presently before it. It finds that defendants bear the risk that plaintiffs may litigate their federal RICO claims at a later date because the Court dismissed the claims without prejudice. Plaintiffs have indicated that they may in fact pursue this option. *See* Plaintiffs' Memorandum of law in Opposition to Defendants' Motion for Attorneys Fees at 1 ("Plaintiffs are convinced that if forced to litigate the RICO counts, they can and will be successful. It is hoped, however, that this will not be necessary.")

The Court also finds that defendants incurred expenses in preparing to go to trial on plaintiffs' federal RICO claims. Plaintiffs argue that defendants' expenses were minimal because the federal RICO claims were supported by the same evidence and allegations that supported plaintiffs' FCA claims. *See id.* at 3. The Court recognizes, however, that there is little if any overlap between the law applicable to plaintiffs' federal RICO claims and their FCA claims. Defendants' attorneys had to become thoroughly acquainted with the law of both statutes in order to competently represent their clients. To do so, they incurred expenses.

Plaintiffs let their federal RICO claims stand for more than a year before withdrawing them, doing so only two months before the matter was originally scheduled to go to trial. Plaintiffs filed their amended complaint on January 14, 1997, but it was not until May 6, 1998 that plaintiffs moved to dismiss Counts III through IX of their amended complaint. This was almost five months after defendants' first filed a sum-

mary judgment motion to dismiss plaintiffs' RICO claims. The case was originally set to go to trial on July 13, 1998.

Finally, defendants diligently worked toward having the federal RICO claims against them dismissed. They filed a motion for summary judgment as to plaintiffs' federal RICO claims on December 16, 1997.

Despite the presence of the factors necessary to award attorneys' fees, plaintiffs seem to expect the Court to bestow praise in place of penalty for their voluntary dismissal of their federal RICO claims. Plaintiffs describe their motive for voluntary dismissal as a desire "to try to streamline the trial of this matter by eliminating an alternative theory of liability." *Id.* at 1. Plaintiffs go so far as to attack defendants for "seeking to penalize plaintiffs" for their actions "[i]nstead of embracing this gesture for the good idea that it was." *Id.* Had plaintiffs acted sooner rather than later, the Court might have found their actions a "good idea" and denied defendants' motion for attorneys' fees. Because plaintiffs delayed their voluntary dismissal, however, the Court finds that it must compensate defendants's attorneys for the time and expense incurred in defending against those claims which plaintiffs voluntarily dismissed.

### 2. Calculating Awards of Attorneys' Fees

 The amount of attorneys' fees awarded must be supported by evidence in the record. *See Taragan v. Eli Lilly*, 838 F.2d 1337, 1340 (D.C.Cir.1988). The award should be limited to compensation for work that cannot be used in a second contemplated action or in other pending litigation between the parties. *See id.; Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 18 (E.D.N.Y. 1996). Courts should also refrain from awarding attorneys' fees that were incurred unnecessarily. *See Horton*, 169 F.R.D. at 18.

 From the evidence submitted by defendants, it appears that defendants seek $20,057.75 for preparation of two briefs addressing a single motion and totaling twenty pages.[6] Defendants justify their fee by argu-

---

**6.** Plaintiffs attack defendants' motion for attorneys' fees on this ground. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants'

Motion for Attorneys' Fees at 4, n. 2 ("[T]he amount defendants seek is manifestly excessive. The only event in this case attributable solely to

ing that it is a "serious matter .... [r]epresenting clients who have been accused of violating federal RICO" and that the "attorneys handling the case [had to] fully understand the statute and controlling interpretive case law" or else a "proper defense could not have possibly been provided." Defendants' Reply Brief in Support of Defendants' Motion for Attorneys' Fees at 2. The Court does not disagree with defendants' argument but believes that defendants unnecessarily spent more time than was required to mount a vigorous defense to plaintiffs' federal RICO claims.[7] Therefore, the Court will award defendants attorneys' fees in the amount of $10,028.86, half of the amount requested by defendants. The Court believes this represents a reasonable award in light of the product defendants created.

## III. CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion for reconsideration and finds that Haskins may present evidence at trial of defendants' practices about which Haskins had "direct and independent knowledge" regardless of whether she obtained that knowledge while a student at Omega or thereafter. Plaintiff Ralph may only present evidence of defendants' practices about which she had "direct and independent knowledge" while a student at Omega. To the extent this decision clarifies the Court's July 7, 1998 opinion and order, plaintiffs' motion for clarification is granted. The Court also grants defendants' motion for attorneys' fees in the amount of $10,028.86. The Court will enter an appropriate order.

## ORDER

**THIS MATTER** having come before the Court on a motion by plaintiffs Diane Haskins ("Haskins") and Beverlee Ralph ("Ralph") (collectively "plaintiffs") for reconsideration of the Court's July 7, 1998 opinion and order in this case with regard to the limitation placed on the scope of plaintiffs' complaint; and

the RICO claims is defendants' RICO motion. Essentially, defendants are asking $20,000 for a single motion.")

**THIS MATTER** having come before the Court on a motion by plaintiffs for clarification of the Court's July 7, 1998 opinion and order in this case with regard to same; and

**THIS MATTER** having come before the Court on a motion by Omega Institute, Inc., Lee E. Cobleigh, Franklin Burke, Dr. Clarita Eusebio–Kelly, Raymond Papin, Adele Winter, Joseph Marra, and Sharon Gremmels (collectively "defendants") for attorneys' fees incurred in defending against plaintiffs' federal RICO claims; and

The Court having reviewed the submissions of the parties;

**IT IS** on this *18th* day of November, 1998 hereby **ORDERED** that plaintiff's motion for reconsideration is **GRANTED** to the extent that plaintiff Haskins may present evidence at trial of defendants' practices about which Haskins had "direct and independent knowledge" regardless of whether she obtained that knowledge while a student at Omega or thereafter;

**IT IS FURTHER ORDERED** that Plaintiff Ralph may only present evidence of defendants' practices about which she had "direct and independent knowledge" while a student at Omega;

**IT IS FURTHER ORDERED** that plaintiffs' motion for clarification is **GRANTED** to the extent that this order and corresponding opinion clarify the Court's July 7, 1998 opinion and order in this matter;

**IT IS FURTHER ORDERED** that defendants' motion for attorneys' fees is **GRANTED** in the amount of $10,028.86.

7. Defendants spent 143.91 hours defending against plaintiffs' federal RICO claims.