**HINFIN REALTY CORP., Harbor Fuel Company, Inc., and Glenwood Terminal Corp., Plaintiffs,**

v.

**THE PITTSTON COMPANY, Defendant.**

No. 00 CV 4285(ADS)(MLO).

United States District Court,
E.D. New York.

Dec. 19, 2002.

Farrell Fritz, P.C., by John M. Armentano, Joseph E. Campolo, Of Counsel, Uniondale, NY, for Plaintiffs.

Kathryn Gull, Locust Valley, NY, Patton Boggs, LLP, by David J. Farber, Harold Kim, Of Counsel, Washington, D.C., for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Hinfin Realty Corp., Harbor Fuel Company, Inc., and Glenwood Terminal Corp. (collectively, the "plaintiffs") brought this diversity action against The Pittston Company ("Pittston" or the "defendant") seeking to recover damages they suffered as a result of an oil spill that occurred on their property during a time when the facilities for the receipt and distribution of "no. 6 fuel oil" were allegedly owned, maintained, and repaired by Pittston. Presently before the Court is the defendant's motion for attorney's fees and costs.

### I. BACKGROUND

The relevant facts and parties are discussed in greater detail in the Court's April 12, 2002 Memorandum and Order, familiarity with which is presumed. The plaintiffs brought a motion for the voluntary dismissal of their action pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). Pittston requested that the Court condition the dismissal upon an award of its costs, including attorney's fees in the amount of $135,000.

In the Memorandum and Order, the Court stated that where a plaintiff successfully dismisses a suit without prejudice under Rule 41(a)(2), courts often grant the defendant an award of costs or fees. The Court further stated that, by contrast, courts rarely award fees and costs when an action is dismissed voluntarily with prejudice. The Court stated that if the plaintiffs agreed to dismiss the action with prejudice within ten days of the date of the decision, the Court would deny the defendant's motion for attorney's fees and costs. However, in the event that the plaintiffs decided not to submit a notice indi-

cating that they were dismissing the action with prejudice, the Court stated that the defendant would be permitted to file an application for attorney's fees and costs with the appropriate documentation in support of its application.

In the Memorandum and Order, the Court (1) granted the plaintiffs' motion for a voluntary dismissal of this case without prejudice pursuant to Rule 41(a)(2); (2) denied the defendant's motion for an award of attorney's fees and costs without prejudice and with leave to renew with the proper documentation and in accordance with the Court's Individual Rules; and (3) determined that the Court will retain jurisdiction over this case for the limited purpose of (a) permitting the defendant to file a motion for costs and attorney's fees in compliance with the terms of the Court's Memorandum and Order; or (b) accepting a consent by the plaintiff for a dismissal with prejudice which must be filed within 10 days of the date of the Memorandum and Order.

On April 25, 2002, Pittston filed a motion for attorney's fees and costs. On the same day, the plaintiffs requested an extension of time to file a stipulation discontinuing the action with prejudice. On May 2, 2002, the plaintiffs filed a letter application requesting an extension of time to respond to the defendant's motions for attorney's fees and costs. On May 29, 2002, the plaintiffs filed their opposition papers to the defendant's motion for attorney's fees and costs. On June 4, 2002, the defendant filed its reply to the plaintiffs' opposition to its motion. Not having received the plaintiffs' stipulation discontinuing the action with prejudice, the Clerk of the Court entered judgment on June 6, 2002 for plaintiffs' motion for a voluntary dismissal of the case, without prejudice, pursuant to Fed.R.Civ.P. 41(a)(2).

## II. DISCUSSION

The plaintiffs oppose the defendant's motion for attorney's fees and costs on the grounds that, (1) the plaintiffs commenced and conducted this action in good faith; (2) the defendant's bad faith conduct precludes an award of such fees; and (3) there will be minimal duplicative expense. The plaintiffs further argue that, (a) Pittston's application for attorney's fees is premature; (b) if fees are awarded by the Court, it should hold enforcement of such order in abeyance, unless and until the plaintiffs commence another action against Pittston; and (c) the fees should be subject to a lodestar reduction. In response, Pittston argues that, (1) the plaintiffs' claim that they are not liable for fees has already been rejected by the Court; (2) Pittston acted in good faith throughout the action; and (3) most of Pittston's actions were expended on tasks that would not be duplicated in a future case.

At the outset, the Court notes that in the April 12, 2002 Memorandum and Order, it stated that "courts often grant fee awards when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)." *Jewelers Vigilance Committee, Inc. v. Vitale, Inc.*, No. 90–1476, 1997 WL 582823, at *4, 1997 U.S. Dist. LEXIS 14386, at *12 (S.D.N.Y. Sept. 19, 1997) (citing *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir.1985)). "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito*, 764 F.2d at 133 (citations omitted). Generally, both attorney's fees and costs are included in fee awards. *See e.g., Colombrito*, 764 F.2d at 133; *Mercer Tool Corp. v. Friedr. Dick*, 179 F.R.D. 391, 397 (E.D.N.Y.1998). The Court will now review the grounds by the plaintiffs in opposition to the defendant's motion for attorney's fees and costs.

First, the plaintiffs argue that their "good faith" in bringing this action precludes the award of fees to the defendant. The Court agrees that the plaintiffs acted in good faith. Nevertheless, in the April 12, 2002 Memorandum and Order, this Court determined that fees are appropriate unless the plaintiffs dismissed their claim with prejudice. Having failed to dismiss the action with prejudice, the Court rejects the plaintiffs' argument that fees and costs should be denied to the defendant based on their good faith.

Second, the plaintiffs urge the Court to carefully review Pittston's conduct, especially

since the plaintiffs' assets are the property involved herein and they have a limited cash of approximately $20,000. The plaintiffs argue that the defendant's bad faith conduct should not be awarded. In particular, the plaintiffs contend that Pittston consistently represented to the plaintiffs that certain documents, namely the stock purchase agreements, would exonerate them. According to the plaintiffs, because such agreements were not turned over to the plaintiffs until February 2002, the defendant's behavior resulted in "an enormous waste of judicial resources and of plaintiffs' very limited resources."

In response, the defendant argues that the plaintiffs were informed that Pittston could not release the stock purchase agreements without Ultramar's consent. In support of its assertion, the defendant submits a copy of a letter dated January 26, 2001 in which Pittston requested that Ultramar consent to the release. The defendant also offer a copy of a letter dated January 29, 2001 in which Ultramar refused to allow Pittston to produce the documents unless the plaintiffs propounded a document request and enter into a confidentiality order. The defendant contends that the plaintiffs failed to propound the request or agree to a protective order keeping the documents confidential.

According to Pittston, it was not until United States Magistrate Judge Michael Orenstein ordered Pittston to produce the documents notwithstanding the confidentiality clause that they were produced. Furthermore, in an affidavit, David J. Farber, an attorney for Pittston, states that after the suit was filed on June 24, 2000, the defendant made repeated attempts in which he advised the plaintiffs that the suit against Pittston was improper and provided the plaintiffs with documents and explanations as to why their state court suit might be justified, but their federal claim against Pittston was frivolous. Furthermore, the defendant notes that the plaintiffs made no discovery requests. Based on the letters submitted by the Pittston and the representations made by Farber, the Court finds that the defendant did not act in bad faith.

Third, the plaintiffs argue that Pittston's application for attorney's fees and costs should be denied because there will be minimal duplicative expense. According to the plaintiffs, Pittston's application for fees and costs should be denied in all respects because any work performed to date by counsel would be useful if the litigation were resumed.

On the other hand, Pittston argues that the following non-recurring expenses are the proper subject of a fee award: (1) compelling the plaintiffs to provide initial disclosures; (2) attempting to convince the plaintiffs that they should not pursue two cases and that their case was premature in light of the uncertain damages at issue; (3) filing a motion to stay and replying to the plaintiffs' opposition; (4) working to compel the plaintiffs' discovery responses to meet the Magistrate's deadlines and attending multiple status conferences before Magistrate Orenstein to advance discovery in light of the Court-ordered deadlines; (5) identifying the plaintiffs' former employees with knowledge of the facts that the plaintiffs failed to identify in their Rule 16 disclosures or discovery responses; (6) subpoenaing documents from third parties that the plaintiffs should have produced; and (7) opposing the plaintiffs' Rule 41 motion.

Counsel for Pittston ("counsel") request that they be awarded a total amount of $167,387.86 representing $159,673.75 in attorney's fees and $7,714.11 in costs. As an accommodation to Pittston, counsel claim that they wrote off some fees. According to counsel, in similar cases, Pittston would have incurred no more than $25,000 had the plaintiffs conducted themselves properly.

■ "[P]ayment of fees [upon dismissal without prejudice] must be limited to compensation for work that cannot be used in a second contemplated action, and the amount of fees awarded must be supported by evidence in the record." *Ames v. Clifford*, No. 94–6712, 1996 WL 563098, at *1, 1996 U.S. Dist. LEXIS 14565, at *2 (S.D.N.Y. Oct. 2, 1996) (citing *Horton v. Trans World Corp.*, 169 F.R.D. 11, 18 (E.D.N.Y.1996)) (noting that courts generally will not reimburse defendants for the costs and expenses incurred for work that will be relevant in other pend-

ing litigation between the parties, or that were incurred unnecessarily).

As stated in the April 12, 2002 Memorandum and Order, if the plaintiffs choose to file another lawsuit against Pittston, the grounds likely will be the same, and much of the work already done by Pittston will be either unnecessary or easy to duplicate. If the case is renewed in the future, Pittston can use some of the material discovered and the legal work already done. The Court finds that there has been minimal discovery conducted in this case. As such, this Court does not anticipate that there will be a large amount of duplicative expenditures.

With reasonable certainty, the Court is of the view that some of the materials in the defendant's enumerated categories for their non-recurring expenses would be useful in any future litigation. At this juncture, the Court is unable to determine the amount of fees that should be awarded to counsel, if any. Counsel have submitted the hourly rates for the attorneys and the paralegal involved in this action, in addition to their billing time sheets. However, counsel have failed to delineate the total amount of legal fees and costs in each category of the work performed in this case so that the Court could determine the fees attributable to work which may be useful in a future lawsuit.

Accordingly, because counsel has not categorized the fees for their recurring and non-recurring expenses, the Court denies counsel's request in the total sum of $167,387.86 of fees and costs. As such, counsel is directed to submit an affidavit delineating (1) each category of the work performed in this case; (2) the hours billed for each category; (3) the hours billed by each attorney for each category; (4) the total amount of fees and costs incurred for each category; and (5) the total amount of fees and costs subtracted by counsel for each category.

Failure to submit the affidavit within 20 days of the date of this order will constitute a waiver of the defendant's fees and costs. The Court notes that, with reasonable certainty, it will reduce the defendant's fee application by the amount of work the defendant will be able to use in a subsequent litigation. Furthermore, this decision does not mandate that the defendant will be awarded any fees and costs.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion for an award of attorney's fees and costs is **DENIED** without prejudice and with leave to renew with the proper documentation in accordance with this order; and it is further

**ORDERED,** that the defendant's failure to submit an affidavit within 20 days of the date of this order will constitute a waiver of defendant's fees and costs.

**SO ORDERED.**